**DISTRICT OF COLUMBIA et al., Plaintiffs,**

**and**

**Washington Metropolitan Area Transit Authority et al., Intervenors,**

v.

**LANDMARK SERVICES, INC., Defendant.**

**UNITED STATES of America, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

Civ. A. Nos. 75–1798, 75–2148.

United States District Court, District of Columbia.

June 30, 1976.

Richard G. Wise, Asst. Corp. Counsel, Washington, D. C., for plaintiff District of Columbia.

Jordan S. Himelfarb, Washington, D. C., for intervenor Washington Metro Area Transit Authority.

Donald J. Balsley, Jr., Washington, D. C., for intervenor Washington Metropolitan Area Transit Commission.

Charles B. Ruttenberg and Daniel C. Kaufman, Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., for defendant Landmark Services, Inc.

Earl J. Silbert, U. S. Atty., Robert N. Ford and Gilbert Zimmerman, Asst. U. S. Attys., Washington, D. C., for plaintiff U. S.

## MEMORANDUM AND ORDER

SIRICA, District Judge.

The Court has consolidated these two suits for decision of the issues common to them. The first, *District of Columbia v. Landmark Services, Inc.*, C.A. No. 75–1798, was originally brought by the District of Columbia and Mayor Washington against Landmark Services, Inc. ("Landmark") in D. C. Superior Court, but the defendant had it removed here under 28 U.S.C. § 1442(a)(1) (1970). Originally, they sought

a declaratory judgment and an injunction against Landmark to prevent it from operating a particular tour service until the corporation complied with certain licensing and registration requirements of the D.C. Code. The service that the District of Columbia claimed Landmark was operating illegally was an interpretive transportation service—that is, a bus tour with vocal commentary along the way. It ran on a circuit from the parking lot of Robert F. Kennedy Memorial Stadium partly along city streets to various points of interest for tourists on the Mall and back again. The parking lot is located about two miles east of the Capitol. The Mall, a federal park, extends generally from the Capitol west past the Washington Monument to the Lincoln Memorial and is bordered by museums and art galleries.

The Washington Metropolitan Area Transit Authority and the Washington Metropolitan Area Transit Commission ("WMATC") have been allowed to intervene to support the plaintiffs.

Landmark, the defendant, has contracted with the Secretary of the Interior ("Secretary") to provide the interpretive transportation service at issue in this case. Its sole defense has been that 40 U.S.C. § 804 (Supp.1974) gives exclusive authority to the Secretary to regulate this service and that therefore the firm is immune from the enforcement of these local regulations against it.

The second suit, *United States v. District of Columbia*, C.A. No. 75–2148, was brought because of the first suit. Its entire purpose and effect have been to make the federal government an intervenor-defendant in that suit; therefore, the Court will treat the United States as such and decide the matter accordingly.[1]

### I.

The relevant facts are not in dispute. The federal government and Landmark on one side and the D. C. government on the other have each sought judgment in their favor. However, before addressing the merits of these motions, the Court must first decide whether the issues raised are still ripe for adjudication. On January 27, 1976, while both these suits were pending, the acting director of the National Capital Parks did give public notice that the service in controversy here had been suspended because relatively few people were using it. 41 Fed.Reg. 3887–88 (1976). But the director also said at that time that he intends to begin service again if the demand becomes great enough. Since the number of visitors coming to the Washington area generally increases in the spring and summer, and since the number is especially likely to increase substantially in this Bicentennial year, the Court concludes that, although an injunction may no longer be appropriate, the controversy still has sufficient life to support jurisdiction for purposes of a declaratory judgment. Therefore, the Court must consider the merits of the motions made.

### II.

The District of Columbia claims that Landmark must comply with the following D. C. regulations if it is to operate interpretive transportation service from the Robert F. Kennedy Memorial Stadium parking lot to the Mall and back again:

(1) D.C. Code § 40–102 (1973) (vehicle registration);

(2) D.C. Code § 40–201 *et seq.* (1973) (vehicle inspection);

(3) D.C. Code § 47–2338 (1973) (licensing of tour guides);

(4) D.C. Code § 29–933 (1973) (certification and filing of annual reports as a foreign corporation).

Landmark admits that ordinarily it would have to comply with these regulations. Its argument is that its contract with the Secretary was authorized by 40 U.S.C. § 804

---

1. Because the Court takes this view of the two cases, WMATC's motion to intervene also in C.A. No. 75–2148, and the motions to dismiss of Landmark in C.A. No. 75–1798 and of the District of Columbia in C.A. 75–2148, on the ground of failure to join an indispensable party under Rule 19 of the Federal Rules of Civil Procedure, need not be decided.

(Supp.1974) and that this provision specifically exempts the operator of the service from that obligation. Section 804 provides as follows:

> The Secretary [of the Interior] is directed to utilize the authority under [16 U.S.C. § 1 *et seq.*], to provide interpretive transportation services between or in Federal areas within the District of Columbia and environs, including, but not limited to, transportation of visitors on, among, and between the Mall, the Ellipse, the National Visitor Center, John F. Kennedy Center for the Performing Arts, and East and West Potomac Park, and such other visitor facilities as may be established pursuant to this chapter, and with the concurrence of the Architect of the Capitol, to provide such services on, among, and between such areas and the United States Capitol Grounds. The Secretary shall determine that such services are desirable to facilitate visitation and to insure proper management and protection of such areas. *Such interpretive transportation services shall, notwithstanding any other provision of law to the contrary, be deemed transportation by the United States and shall be under the sole and exclusive charge and control of the Secretary.* [emphasis added]

The District of Columbia's primary concern obviously is with the last sentence of the section. Its first argument is a direct one—that, despite the rather absolute language of that sentence, Congress did not intend to give a concessionaire of the services described in the statute absolute immunity from all local regulation, but only immunity from that which might be actually inconsistent with the concessionaire's obligations to the Secretary. The regulations at issue, D. C. claims, are not inconsistent with Landmark's obligations. D. C.'s other argument is more indirect—that the Secretary's particular contract with Landmark was not authorized by § 804 and that therefore the last sentence of that section does not come into play. D. C. gives two reasons why § 804 does not authorize this contract. The first is that the section authorizes only contracts for "interpretive transportation

services," and the service Landmark would provide would not meet that definition because Landmark did not on at least some occasions when the service was active provide commentary on the tour at all and, therefore, presumably would not should the service begin again. The second reason is that the Robert F. Kennedy Memorial Stadium parking lot is not one of the areas to which Congress intended the Secretary's contracting power under § 804 to extend.

In order to address these issues properly, some background to the enactment of § 804 is necessary.

### III.

The Secretary first began to experiment with interpretive transportation service during the mid-1960's. At the start, he limited the service to the geographic confines of the Mall itself. Tourists quickly became enchanted with the service, and so, in turn did the Secretary.

But the WMATC soon brought suit against the operator of the service, Universal Interpretive Shuttle Corporation ("Universal"), to enjoin the tours until the firm fulfilled the local regulatory prerequisite of obtaining a certificate of convenience and necessity from the Commission. Universal's defense was similar to that in this case: that the Secretary had exclusive authority under D.C. Code §§ 8–108 and 8–109 to regulate interpretive bus service within the limits of the Mall and that therefore the corporation was immune from the enforcement of the WMATC's requirements.

The Secretary agreed completely with Universal and quickly turned for help to Congress, which was at that time considering what was to become the National Visitor Center Facilities Act of 1968, Pub.L. No. 90–264 (March 12, 1968), 40 U.S.C. §§ 801–31 (1970). The Secretary proposed that it add to the bill the following provision:

> The Secretary is directed to utilize the authority under [16 U.S.C. § 1 *et seq.*] to provide interpretive transportation services between or in Federal areas within the District of Columbia and environs,

including transportation of visitors on, among and between the Mall, the Ellipse, and East and West Potomac Park when he deems such action advisable to facilitate visitation and to insure proper management and protection of such areas. Such interpretive transportation services shall, any provision of law to the contrary notwithstanding, be deemed transportation by the United States and shall be under the sole and exclusive regulation of the Secretary. The Secretary is further directed to provide such services on, among, and between the areas referred to in the first sentence of this section and the National Visitor Center and such other visitor facilities as may be established pursuant to this Act. [S.Rep. No. 959, 90th Cong., 2d Sess. 10 (1968), U.S.Code Cong. & Admin.News 1968, p. 1720]

It is clear from the language of this proposed amendment itself and from the letter to the Senate Committee on Public Works which suggested it, S.Rep. No. 959, 90th Cong., 2nd Sess. 8–10 (1968), that the Secretary had two ends in mind. The first was to insure that he would have the authority to provide, by contract or otherwise, interpretive transportation services to four different kinds of places within the District of Columbia and environs:

(1) the Mall and other adjacent tracts of federal land which had on them points of interest for tourists;

(2) other particular "Federal areas" outside of these tracts that were points of interest. No doubt, the Secretary was thinking of such places as the Supreme Court. See S.Rep. No. 228, 93d Cong., 1st Sess. (1973), U.S.Code Cong. & Admin.News 1973, p. 1571; H.R.Rep. No. 209, 93d Cong., 1st Sess. 6 (1973);

(3) the National Visitor Center;

(4) "other visitor facilities as may be established pursuant to this Act."

The phrase "other visitor facilities as may be established pursuant to this Act" evidently refers to what became § 106 of the Act, 40 U.S.C. § 805(a) (1970). That provision directs the Secretary:

in consultation with the National Visitor Facilities Advisory Commission . . . (1) to make a continuing study of the needs of visitors to the Washington metropolitan area, including the necessity and desirability of different or additional visitor facilities, and (2) to recommend that the Administrator [of the General Services Administration] acquire, alter, or construct such facilities.

The legislative history of this section indicates that Congress's intent was that the Secretary alone be the one to finally decide whether additional visitor facilities might be necessary, and that he be able to recommend directly to the Administrator rather than through Congress, that money be spent on these facilities. S.Rep. No. 959, 90th Cong., 2d Sess. 3 (1968); H.R.Rep. No. 810, 90th Cong., 1st Sess. 6 (1967). The plan that Congress envisioned, then, for establishing "other visitor facilities" was that the Secretary be generally free to designate such facilities as he saw fit. That power would be limited, however, (1) by his need to consult beforehand with the National Visitor Facilities Advisory Commission established by 40 U.S.C. § 821 (1970);[2] (2) by the power of the Administrator of the GSA to decline to spend money on a particular facility; (3) by the total amount of money that might be available; and (4) by a possible subsequent legislative veto.[3]

The Secretary also had a second end in mind when he proposed that Congress add the particular provision to the bill it was considering. This was to insure that he

---

**2.** The Commission is composed of the Secretary, the Administrator of the GSA, the secretary of the Smithsonian Institution, the Chairman of the National Capital Planning Commission, the Chairman of the Commission of Fine Arts, six members of the Senate and six of the House of Representatives, and three persons appointed by the President, one of whom must be a representative of the District of Columbia. 40 U.S.C. § 822(a) (1970).

**3.** Congress has required that the Secretary report annually to it on all visitor facilities authorized by the Act. 40 U.S.C. § 805(b) (1970).

would be able to exercise his power under 16 U.S.C. § 1 *et seq.* to provide tour services to the four different areas without the intervention of the District of Columbia or other local governmental authority. In effect, he sought to have these services treated as if they ran totally on federally controlled parkland.

In sum, the provision which the Secretary was asking for would, if passed, have given him authority to provide interpretive transportation services not only within the Mall but also to a potentially significant number of other sites within the D. C. area. It would also have given him the power to regulate these services, within the limits of his general power under 16 U.S.C. § 1 *et seq.,* free from local intervention. This would surely have mooted the suit then pending in court and have prevented others like it from being brought against any extension of the service beyond the Mall.

But Congress apparently was not convinced at that time that such a wide grant of power was necessary. Instead, it inserted in the final version of the bill a provision directing the Secretary to present a study of the problem to Congress. Pub.L. No. 90–264, § 104 (Mar. 12, 1968), 40 U.S.C. § 804 note (1970).

Shortly after the National Visitor Center Facilities Act of 1968 was passed, the Supreme Court decided the question of whether the Secretary had exclusive authority to regulate interpretive bus tours within the Mall in the Secretary's favor. *Universal Interpretive Shuttle Corp. v. WMATC,* 393 U.S. 186, 89 S.Ct. 354, 21 L.Ed.2d 334 (1968). However, the Court there specifically noted that "[t]he Secretary's power does not extend beyond [the] limits [of the Mall itself]." 393 U.S. at 191 n. 4. Therefore, in 1973, the Secretary again proposed a measure to extend his authority to provide interpretive bus service beyond the Mall. S.Rep. No. 228, 93d Cong., 1st Sess. 6–8 (1973); H.R.Rep. No. 209, 93d Cong., 1st Sess. 6–7 (1973). This provision, which eventually became what appears in 40 U.S.C. § 804 (Supp.1974), varied only slightly from the 1968 version. For example, the language in

the earlier version that would have given the Secretary "sole and exclusive regulation" was changed to "sole and exclusive charge and control," no doubt to make its purpose even clearer. Also, the separate sentence at the end of the 1968 version that would have given the Secretary the power to establish interpretive bus tours "on, among, and between" the visitor attractions and the "National Visitor Center and such other visitor facilities as may be established pursuant to this Act" was incorporated into the first sentence of the new bill. This last change was made at the cost of some syntactical nicety, but the Secretary apparently thought it necessary to make clear that he would have sole control over all interpretive transportation equally. In sum, the intent of the 1973 version was, in relevant part, the same as that of the 1968 version: to give the Secretary the power to contract for interpretive transportation services among and within the various points of interest in federal areas, the National Visitor Center and "such other visitor facilities as may be established pursuant to [40 U.S.C. § 805(a)]," and to control the service contracted for, to the extent of his general powers, free from the intervention of local regulation. This time, the measure, unaltered, quickly passed both houses and became law.

## IV.

With this background to § 804, the issues raised by the District of Columbia become relatively straightforward. The crucial premise of D. C.'s first argument is that the Secretary's exclusive authority only extends to subjects over which there would be an actual conflict with the local regulatory body. The purpose of the grant of "sole and exclusive charge and control" over the tour service to the Secretary, however, was precisely to avoid questions such as these by making the Secretary's exclusive authority coextensive with his general powers over this kind of service. The regulations at issue here concern the safety and taxing of vehicles and the licensing and taxing of businesses. These are subjects over which

the Secretary clearly has power under 16 U.S.C. §§ 20–20g (1970). Therefore, the District of Columbia cannot enforce these regulations against the operator of interpretive transportation services that are authorized by § 804.

The second issue, that Landmark would not, in fact, provide "interpretive" commentary on the tours, is simply irrelevant. The Secretary has concededly contracted for interpretive bus service. If Landmark should fail to perform, then the Secretary obviously would have an action for breach of contract; but he would not thereby lose the control over the service that Congress has given him.

The final issue, that the parking lot of Robert F. Kennedy Memorial Stadium is not one of the places to which Congress intended the Secretary to be able to extend the service, is somewhat more difficult. Although the parking lot obviously would not be a "Federal area" for the purposes of the statute, it would be a "visitor facility" if it has been established as such under the Act. The problem is whether it has been so established. Since no money had to be expended, the only questions are whether the Secretary has consulted with the National Visitor Facilities Advisory Commission and whether he has designated the parking lot as a "visitor facility." But since the service has been discontinued at least temporarily, there is no need to inquire into these matters, for presumably, if the Secretary did not fulfill these requirements before, he certainly will do so in the future if he wishes to begin the service again.

Accordingly, it is this 30th day of June, 1976,

DECLARED that Landmark Services, Inc., is immune from the enforcement against it of D.C. Code §§ 40–102, 40–201 et seq., 47–2338, and 29–933 (1973), with regards to interpretive transportation services that it might provide from the parking lot of Robert F. Kennedy Memorial Stadium to the Mall and back again, if the Secretary of the Interior has properly designated that parking lot as a "visitor facility" under the National Visitor Center Facilities Act of 1968, 40 U.S.C. §§ 801–31 (1970), as amended, (Supp.1974); and it is

ORDERED that these cases be, and the same hereby are, dismissed.