UNITED STATES of America

v.

DISTRICT OF COLUMBIA, Appellant.

DISTRICT OF COLUMBIA et
al., Appellants,

v.

LANDMARK SERVICES, INC., Appellee.

Nos. 76–2029 and 76–2030.

United States Court of Appeals,
District of Columbia Circuit.

Argued 31 Oct. 1977.

Decided 29 Dec. 1977.

Richard G. Wise, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Principal Asst. Corp. Counsel, John C. Salyer, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellants.

Larry A. Boggs, Atty., Dept. of Justice, Washington, D. C., with whom Peter R. Taft, Asst. Atty. Gen., Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., were on the brief, for United States of America.

Jacques B. Gelin, Washington, D. C., also filed an appearance for United States of America.

Charles B. Ruttenberg, Washington, D. C., with whom Daniel C. Kaufman, Washington, D. C., was on the brief for appellee Landmark Services, Inc., No. 76–2030.

Before LEVENTHAL, MacKINNON and WILKEY, Circuit Judges.

Opinion for the Court filed by WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

The National Visitor Center Act, as amended,[1] ("the Act") authorizes the Secretary of the Interior to provide certain kinds of transportation services between Federal areas within the District of Columbia. The Act further provides that such services "shall be under the sole and exclusive charge and control of the Secretary [of the Interior]."[2] This is an appeal by the District of Columbia from a judgment of the District Court (Sirica, J.)[3] holding that the Act precluded application of certain local District of Columbia laws to Landmark Services, Inc. ("Landmark"),[4] a private cor-

---

1. 40 U.S.C. § 804 (Supp. V., 1975).

2. *Id.*

3. The Memorandum opinion of the District Court is reported below at 416 F.Supp. 559 (D.D.C.1976), and is reproduced at Joint Appendix (J.A.) 248–260.

4. Landmark is incorporated under the laws of California.

poration operating a bus shuttle service between the Mall[5] and a parking lot at Robert F. Kennedy Memorial Stadium[6] pursuant to a contract with the Secretary of the Interior. These local laws required the registration and inspection of motor vehicles, the licensing of tour guides, and the certification of foreign corporations.

We are in general agreement with the District Court's analysis of the issues, with two exceptions; hence, we modify and affirm the District Court's judgment. The purpose of this opinion is to identify and place the law on these latter two issues in what we deem the correct posture.

## I. BACKGROUND

The Secretary of the Interior is responsible for maintaining the national parks, and for providing services for their public enjoyment.[7] In particular, the Congress has conferred on the Secretary "exclusive charge and control" over the Mall and other parks in the District of Columbia.[8]

Since 1967 the Secretary, pursuant to this broad authority, has provided *within the Mall* so-called "interpretive visitor transportation services" which are simply bus tours with vocal commentary. These narrative tours have been provided by Landmark Services, Inc., a private corporation under contract with the Secretary. In 1968 the Supreme Court held in *Universal Interpretive Shuttle Corp. v. Washington Metropoli-*

*tan Area Transit Commission*[9] that these Mall tour services were subject solely to the regulation of the Secretary. This immunity from local regulation, however, was held— *in the absence of further specific Congressional authorization* —to be limited to areas, such as District of Columbia parks, which are under the "exclusive charge and control" of the Secretary.

First in 1968 and then again in 1973, the Secretary requested that Congress expand his authority to provide the public with interpretive transportation services *beyond the Mall*. In 1973, as part of an amendment to the National Visitor Center Facilities Act, the Secretary's request was granted. By Act of 6 July 1973[10] Congress amended the National Visitor Center Act of 1968, authorizing the Secretary to provide

interpretive transportation services between or in Federal areas within the District of Columbia and [its] environs, including, but not limited to, * * * the Mall * * * and such other visitor facilities as may be established pursuant to this Chapter.

The amendment further directed that[11]

[s]uch interpretive transportation services shall, notwithstanding any other provision of law to the contrary, be deemed transportation by the United States and shall be under the sole and exclusive charge and control of the Secretary [of the Interior].

5. The Mall is a large grassy park located in the center of the City of Washington and studded with national monuments and museums. The park extends generally from the Capitol west past the Washington Monument to the Lincoln Memorial.

6. The Robert F. Kennedy Memorial Stadium is a sports complex located in Southeast Washington in a portion of Anacostia Park. The Stadium is approximately 2 miles from the Mall.

7. 16 U.S.C. §§ 1, 17b, 20. This responsibility is met principally through the National Park Service, which was created by the Act of 25 August 1916, c. 408, § 1, 39 Stat. 535, as an agency of the Department of the Interior. Since there is no conflict between them, we shall refer directly to the Secretary of the Inte-

rior rather than to the Director of the National Park Service.

The Secretary is empowered under 16 U.S.C. § 17b to "contract for services . . . provided in the national parks . . . for the public . . . as may be required in the administration of the National Park Service. . . . ." Moreover, he is "to encourage and enable private persons and corporations . . . to provide and operate facilities and services which he deems desirable . . . ." 16 U.S.C. § 20a.

8. D.C.Code § 8–108.

9. 393 U.S. 186, 89 S.Ct. 354, 21 L.Ed.2d 334 (1968).

10. 87 Stat. 146, 40 U.S.C. § 804.

11. *Id.*

In January 1975 the Secretary, acting pursuant to this amendment (hereinafter "Section 804"), determined that interpretive transportation services between the Mall and a parking lot at the Robert F. Kennedy Stadium would be desirable to facilitate visitation and to insure proper management and protection of the Mall.[12] Thereafter the Secretary negotiated with Landmark an amendment to its contract expanding existing shuttle services to include a designated route between the Mall and the Stadium parking lot.[13] The Stadium and its parking lot are located in Anacostia Park, which, like the Mall, is a park in the District of Columbia under the "exclusive charge and control" of the Secretary. A distance of approximately 2 miles separates the Mall from that portion of Anacostia Park on which the Stadium is located. The Mall-Stadium shuttle route, therefore, traversed streets within the jurisdiction of the District of Columbia government.

On 13 October 1975 Landmark started the Mall-Stadium shuttles. In operating these services, however, Landmark refused to comply with the following local District of Columbia laws and regulations:

(1) D.C.Code §§ 40–102 and 40–201 (1973), which compel the registration and safety inspection of motor vehicles;

(2) D.C.Code § 47–2338 (1973), which requires licensing of guides operating in the District of Columbia; and

(3) D.C.Code § 29–933 (1973), which obliges foreign corporations to obtain certificates of authority to transact business within the District of Columbia.

Landmark justified its non-compliance with these local laws on the ground that its Mall-Stadium shuttles were "interpretive transportation services between . . . Federal areas" and, as such, were under the "sole and exclusive charge and control of the Secretary [of the Interior.]"[14]

On 14 October 1975 the District of Columbia filed an action in the Superior Court of the District of Columbia against Landmark seeking (1) a declaratory judgment that Landmark's operation of the Mall-Stadium shuttle without prior compliance with local vehicle registration and inspection, guide licensing, and corporation certification requirements was unlawful, and (2) an injunction against Landmark which would prohibit it from operating the shuttle unless and until it complied with these requirements.[15] Landmark obtained removal of the action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1442(a)(1).[16]

On 23 December 1975 the United States filed a separate action in the District Court against the District of Columbia seeking a declaratory judgment that the Mall-Stadium shuttle was, by virtue of Section 804, under the sole control of the Secretary of the Interior and was exempt from local motor vehicle registration and inspection and guide licensing requirements.[17] Significantly, the United States made no claim regarding corporate certification requirements. The United States simultaneously moved for consolidation of the two cases. Following consolidation, the United States moved for summary judgment;[18] the District of Columbia then filed a cross-motion for summary judgment and an opposition to the United States' motion.[19] The controversy was decided on these motions.

During pendency of these consolidated cases the Mall-Stadium shuttle service was temporarily suspended because relatively few people were using it. The service has not to date been resumed.[20]

12. On 24 January 1975 the Director of the National Park Service noticed this determination and his intent to provide this service between these two points. 40 Fed.Reg. 3792 (J.A. 156).

13. J.A. 112–116.

14. See 40 U.S.C. § 804.

15. J.A. 11–20.

16. J.A. 94–96.

17. J.A. 88–89.

18. J.A. 101.

19. J.A. 169, 176.

20. 41 Fed.Reg. 3887–88 (1976); J.A. 221.

On 30 June 1976 the District Court entered its "Memorandum and Order".[21] As a threshold matter, it properly held that the actions were not mooted by the temporary suspension of the shuttle.[22] On the merits, it held that Landmark, in providing interpretive transportation services for the Secretary of the Interior under Section 804, was exempt from local motor vehicle and tour guide regulations as well as foreign corporation certification requirements.[23] This appeal followed.

## II. ANALYSIS

The position of Landmark and the United States, both in the District Court and on this appeal, is that the Mall-Stadium shuttles were "interpretive transportation services between . . . Federal areas" within the meaning of Section 804; that, as such, these services were "transportation by the United States, . . . under the sole and exclusive charge and control of the Secretary [of the Interior]"; and that the charge and control of the Secretary over this transportation was indeed *"sole and exclusive,"* precluding concurrent regulation over any aspect of these services by the District of Columbia.[24]

The District of Columbia challenges this position on three grounds.

As its first line of attack, the District of Columbia contends that Landmark on occasion failed to provide vocal commentary on its Mall-Stadium route. Therefore, it argues, these services were not truly the type of *"interpretive* transportation" contemplated in Section 804, and hence could not properly be deemed "transportation by the United States . . . under the sole and exclusive control of the Secretary [of the Interior]."[25] The District Court disposed of this argument, stating that:[26]

[the fact that Landmark may have occasionally omitted commentary on its shuttles] is simply irrelevant. The Secretary has concededly contracted for interpretive bus service. If Landmark should fail to perform, then the Secretary obviously would have an action for breach of contract; but he would not thereby lose the control over the service that Congress has given him.

We agree on this matter with the District Court. The contract between the Secretary and Landmark called for "interpretive visitor transportation services."[27] It must be the character of the services contracted for, and not the actual quality of a concessionaire's performance, that determines whether particular services are to be deemed "transportation by the United States" within Section 804. If it were otherwise, the scope of the Secretary's authority would be controlled by the relative fidelity of concessionaires to the terms of their contracts.

As its second line of attack, the District of Columbia contends that the parking lot at Robert F. Kennedy Memorial Stadium is not a "Federal area" within the meaning of Section 804.[28] Therefore, it asserts, the Mall-Stadium shuttles could not be deemed "transportation by the United States" because they did not actually run *"between* . . . Federal areas." The District Court agreed with the District of Columbia that the Stadium parking lot is not a "Federal area." Nevertheless, it found that the site could be designated "visitor facilities" under Section 804, and presumably would be if the service was resumed. Therefore, it concluded that the shuttle service between the Mall (a Federal area) and the Stadium (a non-Federal area "visitor facility") would qualify as "transportation by the United

21. *District of Columbia v. Landmark Serv., Inc.,* 416 F.Supp. 559 (1976).

22. *Id.* at 560.

23. *Id.* at 564.

24. *See* Brief of Appellee (United States), 13–22; Brief for Appellee (Landmark), 6–19.

25. Brief of Appellant, 10–11.

26. 416 F.Supp. at 564.

27. J.A. 116.

28. Brief of Appellant, 12.

States" under Section 804.[29] The implication of this view is that the "other visitor facilities" referred to in Section 804 as appropriate shuttle destinations do not necessarily have to be "Federal areas" and, consequently, the Secretary is authorized to designate as "visitor facilities" any number of non-Federal sites throughout the Washington, D.C. area and to establish interpretive transportation service to these locations, over which service he would exercise exclusive control.

■ We agree with the District Court's ultimate conclusion that Landmark's Mall-Stadium service was "transportation by the United States" and, hence, under the "sole and exclusive charge and control of the Secretary [of the Interior]." However, we find that its initial premise that the Stadium parking lot is not a Federal area is erroneous, and, consequently, its determination that the term "visitor facilities" in Section 804 may embrace non-Federal areas is unnecessary.

We believe that the parking lot at the Robert F. Kennedy Memorial Stadium is a Federal area within the meaning of Section 804. The Stadium was authorized by the District of Columbia Stadium Act of 1957.[30] This Act was substantially amended by the Act of 28 July 1958 (the 1958 Amendments),[31] and the Act of 23 September 1959 (the 1959 Amendments).[32] Under Sections 2 and 3 of the Stadium Act the District of Columbia Armory Board was "authorized to construct, maintain, and operate a stadium (including necessary motor-vehicle parking areas)" on land to be acquired from the

Secretary of the Interior. Section 3 of the Stadium Act directed the Secretary to transfer title to such real property to the Armory Board upon its request. Under Section 7 of the Stadium Act, upon payment of the construction bonds, or in any event within 50 years of the enactment of the Stadium Act, title to the Stadium was to be transferred to the District of Columbia.

By Section 3 of the 1958 Amendments, Congress deleted the requirement that title of the United States in the land on which the Stadium would be built should be transferred to the Armory Board.[33] In its place, Congress directed the Armory Board to construct, operate and maintain the Stadium under contract with the Secretary of the Interior. Section 13 of the 1958 Amendments also designates the United States in place of the District of Columbia for eventual receipt of title to the Stadium.[34]

Under the 1959 Amendments, the phrase "necessary motor-vehicle parking areas" was struck from the definition of stadium. The purpose of this change in definition was to continue control over the parking area by the Secretary of the Interior.[35] Thus, the parking lot at the Stadium is a part of Anacostia Park, without any reference to the status of the Stadium, and as such is a Federal area. Hence, there can be no argument that the parking lot may be designated as a visitor facility,[36] and presumably will formally be so designated if interpretive transportation services are resumed to this site.[37]

---

**29.** 416 F.Supp. at 564.

**30.** 71 Stat. 619.

**31.** 72 Stat. 421.

**32.** 73 Stat. 702.

**33.** Title to the land in Anacostia Park on which the Stadium was built was never transferred to the District of Columbia Armory Board. It remained in the United States. *See* H.Rept. No. 2146, 85th Cong., 2d Sess. (1950) p. 7.

**34.** The 1958 Amendments were intended to create a concession contract arrangement for operation of this facility, so that it might be treat-

ed like other public facilities on other parks. 104 Cong.Rec. 13692 (1958).

**35.** 105 Cong.Rec. 15353, 15355 (1959).

**36.** Such designation is authorized under 40 U.S.C. § 805(a).

**37.** Although no express designation of the parking lot as a visitor facility was made prior to this litigation, the determination that the service between this point and the Mall was desirable to facilitate visitation was impliedly such a designation. The District of Columbia, however, asserts that the parking lot at RFK Stadium cannot under any circumstances be a

■ In sum, then, we conclude that the services provided by Landmark between the Mall and the Stadium parking lot were authorized by Section 804. They were "interpretive transportation services" and, if resumed, would be "transportation by the United States . . . under the sole and exclusive charge and control of the Secretary."

As its third and final line of attack, the District of Columbia contends that, even if the Mall-Stadium shuttle is authorized by Section 804, Landmark must nevertheless comply with local laws and regulations which are not inconsistent with Landmark's obligations to the Secretary of the Interior.[38] In other words, the District asserts that Section 804 does not preclude concurrent jurisdiction over Landmark's operations. Specifically, the District urges that Landmark be required to comply with District laws governing vehicle registration and inspection, guide licensing and foreign corporation certification.

After careful analysis of the language of Section 804 and its legislative history, the District Court rejected the District of Columbia's claim of concurrent jurisdiction over Landmark's operations. It found that, in enacting Section 804, Congress intended to give the Secretary of the Interior the authority to control interpretive transportation services *free from the intervention of local regulation.*[39] We agree; but we differ with the District Court concerning the scope of preemption in Section 804.

The actual language of Section 804 could hardly have been more explicit in rejecting the notion of concurrent jurisdiction over transportation *services.* The authorized services are *"notwithstanding any other provision law to the contrary* [to be] *under the sole and exclusive charge and control of the Secretary."*[40] The plain meaning of the language is that a concessionaire's *opera-*

"visitor facility" within the meaning of Section 804. First, it is said that it does not share the two common characteristics of the federal areas specifically named in Section 804: They are all (1) "federal areas" and (2) they are in and of themselves visitor attractions. Second, the District asserts that the only parking facility envisioned by Section 804 was that to be located at the National Visitor Center. Third, the District asserts that only facilities acquired after the enactment of Section 804 may be designated as "other visitor facilities" (Brief of Appellant, 12–17).

The District's argument that the parking lot at RFK does not share common characteristics with the points named in Section 804 initially fails, because—as shown above—the parking lot at RFK Stadium is a "federal area." It also fails because the named points do not share the asserted common characteristics. The National Visitor Center is not owned by the federal government (*See* 40 U.S.C. § 801 and H.Rept. 209, 93d Cong., 1 Sess. (1973), p. 2) and its primary function as envisioned by Congress was not to be an attraction in and of itself but to be a point to facilitate visitation to other sites in Washington (*See* S.Rept. No. 959, 90th Cong., 2d Sess. (1968) pp. 4–5, U.S.Code Cong. & Admin.News 1968, p. 1711).

Although the only parking facility mentioned in the legislative history of Section 804 is that located at the National Visitor Center, there is no support for the proposition that Congress intended to limit such facilities to this one location. The National Visitor Center Facilities Act, 82 Stat. 43, 40 U.S.C. § 801 *et seq.* (1970), of which Section 804 is an amendment, provides for the construction of parking facilities at the National Visitor Center (40 U.S.C. § 802(a)(1)) but it also directs the Secretary of the Interior to continually study the need for additional visitor facilities and to recommend to the Administrator of the General Services Administration that he acquire, alter or construct such additional facilities (40 U.S.C. § 805(a)). Construing these provisions together, it is clear Congress intended the parking facility at the National Visitor Center to be the primary visitor parking area, but not necessarily the only such area.

The argument that Congress intended other visitor facilities to include only federal areas acquired after the enactment of Section 804 has no support in the language or legislative history of the National Visitor Center Facilities Act, 40 U.S.C. § 801 *et seq.* On the contrary, the very use of the term "alter" in 40 U.S.C. § 805(a) suggests that Congress did not intend to foreclose the designation of property owned by the government, prior to the enactment of this Act, as amended. The power to alter suggests a congressional intent to allow existing facilities in government ownership later to be designated as visitor facilities, if the need should arise.

**38.** Brief of Appellant, 23–38.

**39.** 416 F.Supp. at 563.

**40.** 16 U.S.C. § 804 (emphasis added).

658

*tions* are to be controlled *solely* by the Secretary of the Interior without regard to local laws or regulations which would otherwise be applicable.

The District of Columbia has cited no legislative history to indicate that the Congressional purpose was other than that

41. The genesis of Section 804 was a request by the Secretary of the Interior, in 1967, that Congress include in a then pending bill involving the National Visitor Center the following provision:

"The Secretary is directed to utilize the authority under the Act of August 25, 1916 (39 Stat. 535), as amended and supplemented (16 U.S.C. 1 et seq.), to provide interpretive transportation services between or in Federal areas within the District of Columbia and environs, including transportation of visitors on, among, and between the Mall, the Ellipse, and East and West Potomac Park, when he deems such action advisable to facilitate visitation and to insure proper management and protection of such areas. Such interpretive transportation services shall, any provision of law to the contrary notwithstanding, be deemed transportation by the United States and shall be under the sole and exclusive regulation of the Secretary. The Secretary is further directed to provide such services on, among, and between the areas referred to in the first sentence of this section and the National Visitor Center and such other visitor facilities as may be established pursuant to this Act."

[Letter dated 26 December 1967 from Assistant Secretary Cain to Senator Randolph; *reproduced*, S.Rep. No. 959, 90th Cong., 2d Sess., 2 U.S.Code Cong. & Admin.News pp. 1711, 1718–20 (1968)]. This legislative proposal was triggered by then pending litigation which culminated in the Supreme Court decision in *Universal Interpretive Shuttle Corp., supra.* There the Washington Metropolitan Area Transit Commission sued to enjoin Landmark's predecessor-in-name from providing interpretive transportation services on the federal Mall without first obtaining a certificate of convenience and necessity and otherwise complying with The Compact creating WMATC. The Court held that the Commission's authority pursuant to The Compact was preempted by the Secretary of the Interior's " 'exclusive charge and control' over the Mall." *See* 393 U.S. at 188, 89 S.Ct. 354. In the Court's words, it would not "ascribe to Congress a purpose of subjecting the concessionaire to these two separate masters, who show at the outset their inability to agree by presence on the opposite sides of this lawsuit." *Id.* at 191, 89 S.Ct. at 357. That litigation centered around on-Mall services and, as the Court noted, the 90th Congress had been unmoved by the Secretary's

plainly stated in the words of this provision. Indeed, whatever legislative history exists reinforces Congressional intent to exclude local control. *It shows that Congress intended the Secretary's control over off-Mall interpretive transportation services to be as exclusive as if the services were rendered wholly on the Mall.*[41]

past request for like authority beyond the Mall boundaries and had "simply directed him to study the transportation needs of the entire area." *Id.* at 191–92 n.4, 89 S.Ct. at 358. Some five years later the House Committee on Public Works reported out National Visitor Center appropriation legislation with an amendment adding the statutory language which is now codified in Section 804. *See* H.Rept.209, 93rd Cong., 1st Sess. 1 (1973) [Joint App. at 44]. Explaining the background of this legislation, the Department of the Interior stated:

"The authority and direction to provide the extended shuttle services is inserted in the 1968 Act by the draft bill in lieu of the language of the present section 104, which directed the Secretary to report to Congress the results of the study of transporting visitors in the area of the National Visitor Center. That report, which was prepared in May 1968, recommended that the Secretary provide interpretive transportation services between and among the National Visitor Center and the other Federal areas of interest to the visitors to the Nation's Capitol. The bill therefore implements the recommendations of the 1968 report.

"The report of the National Visitor Center Study Commission submitted September 15, 1967, as required by Public Law 89–790 listed as one of its conclusions "The interpretive shuttle system is imperative to the success of the visitor orientation program." The National Visitor Center authorizing legislation (P.L. 90–264) approved March 12, 1968, also contemplated a visitor service package including parking, welcome, orientation and information at the National Visitor Center housed in the renovated Union Station, and a narrated shuttle tour from the Center to the Capitol and the major tourist destinations in the monumental core of the Nation's Capital. The approval of the plans for the National Visitor Center by the National Visitor Facilities Advisory Commission, the National Capital Planning Commission, the Fine Arts Commission, and the Secretary of the Interior were sought and obtained on the basis of this total visitor service package.

"After the concession contract which provides the tour now in operation was signed on March 24, 1967, the authority of the Secretary to provide this service was the subject of litigation. The Washington Metropolitan

■ Nevertheless, there are limits to the preemptive effect of Section 804. Congress only conferred on the Secretary of the Interior sole and exclusive control over "interpretive transportation *services*." The word "services" is key. It connotes the concessionaire's actual operations involving the transportation of visitors between and among authorized destinations. This includes *all* matters relating to vehicles, equipment, personnel,[42] route selection, scheduling, operational procedures, fares and the like.

However, the "services" performed by a concessionaire are to be distinguished from the legal status of the concessionaire as a corporate entity. Most of the requirements for the conduct of business in the District of Columbia by foreign corporations are informational. They require, in part, that the foreign corporation notify the District of the nature of its business, the names of its directors, and its address in the District. They also require the appointment of a registered agent for service of process and the filing of annual informational reports.[43] Informational requirements such as these, relating to the qualification of a foreign corporation to do business in the District, do not affect the actual operations or "services" of the foreign corporation.

■ We believe that Section 804 was intended to insulate the concessionaire's operations from local regulation but was *not* intended to shield the concessionaire itself from local informational requirements for certification as a foreign corporation, as long as compliance with such requirements has no affect on the services performed. Thus, while we agree with the District

---

Area Transit Commission held that the service was subject to its regulation since the shuttle units crossed city streets, and was joined by other bus and sightseeing interests in court action to enjoin the Department of the Interior from providing the service. On November 25, 1968, the Supreme Court of the United States ruled that the Secretary had the authority required to provide shuttle service on the Mall (notwithstanding the crossing of city streets) and the service was initiated. *To extend the tour to Capitol Hill* and the National Visitor Center a number of city streets are involved. This proposed legislation would clearly give the Secretary of the Interior this authority and make possible the extension of the service as planned without the potential delay which would result from further litigation."
*See id.* at 7, letter dated 15 May 1973 from Assistant Secretary John Kyl to Vice President Spiro T. Agnew [Joint App. at 50].

Apart from some grammatical changes and reorganization, the committee amendment of 1973 differed from the 1968 proposal by substituting the phrase "sole and exclusive charge and control" for the earlier language "exclusive regulation" and by expending the scope of Federal areas for which interpretive transportation services would be designated. As Judge Sirica correctly observed, the above-quoted change was intended to make even clearer the Secretary's power to provide interpretive transportation services through concessionaires free from local intervention. *The statutory phraseology tracks the very words which the Supreme Court had earlier held to be preemptive of local regulation.* This background leads inexorably to a single conclusion—Congress intended the Secretary's authority over off-Mall interpretive

transportation services to be as exclusive as if the services were rendered on the Mall.

On 23 November 1977, following oral argument, we ordered counsel for the United States to cause a search to be made of government files for any correspondence or memoranda which might shed light on the purpose of Congress in its selection of the wording used in the last sentence of 40 U.S.C. § 804. *See Minnesota v. United States*, 305 U.S. 382, 390, 59 S.Ct. 292, 83 L.Ed. 235 (1939). We requested counsel to report the results of the search to the court within one month. The search did not turn up any further pertinent legislative history.

**42.** The Secretary of the Interior's exclusive control over matters pertaining to "personnel" is especially important in the case of tour guide qualifications. The District of Columbia has adopted detailed regulations governing the licensing of tour guides, including a requirement that guides be residents of the District of Columbia metropolitan area for a period of two years. *See* D.C.Code § 47–2338 and Police Regulations of the District of Columbia, Art. 2, §§ 5–9. These regulations may not be applied to tour guides employed by Landmark. Tour guide services are clearly a part of the interpretive transportation operations which Landmark performs for the Secretary of the Interior. As such, they are within the sole and exclusive control of the Secretary. The Secretary may set whatever qualifications for tour guides he deems appropriate and enforce them through his contract with Landmark.

**43.** *See* D.C.Code § 29–933, et seq. (1973).

Court's conclusion that Landmark's services should be exempt from local motor vehicles and tour guide laws, we find nothing in Section 804 which precludes application to Landmark of the District of Columbia's foreign corporation certification requirements. The District Court's contrary finding was erroneous, and we herein modify its judgment in this regard.

In sum, then, we hold that Landmark's Mall-Stadium shuttle was authorized under Section 804 and, as such, was under the sole and exclusive charge and control of the Secretary of the Interior. We hold further that the Secretary's exclusive control over the shuttle service precluded application to Landmark of local District of Columbia laws relating to vehicle registration and inspection and tour guide licensing but did not preclude application of local laws relating to certification of foreign corporations. The judgment of the District Court is, therefore

*Affirmed as modified.*