**UNITED STATES of America, Plaintiff,**

v.

**Ruth SCHOFIELD and Amerivision Communications, Inc., Defendants.**

**No. Civ. 99–379(RCL).**

United States District Court, District of Columbia.

Sept. 27, 2000.

---

Keith V. Morgan, U.S. Attorney's Office, Washington, DC, for plaintiff.

Brian J.H. Lederer, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Now before the Court are two motions, one by the plaintiff and one by defendant Ruth Schofield. The plaintiff moves for a default judgment, and the defendant moves to dismiss the complaint. For the following reasons, the Court denies both motions.

## BACKGROUND

The country of Iran owns real property located at 3003 Massachusetts Avenue, Washington, D.C. Under the current diplomatic relations with Iran, the Office of Foreign Missions ("OFM"), a division of the Department of State, is the trustee-landlord of this property. On April 14, 1995, OFM leased the premises to Ruth Schofield for a term of two years, to be followed thereafter by a month-to-month lease. OFM alleges, apparently without opposition from Ms. Schofield, that rent ceased to be paid beginning in late 1997. Ms. Schofield is still in possession of the property.

After making several unsuccessful attempts to collect the rent, OFM filed this suit on February 18, 1999. Hearing nothing in response from Ms. Schofield, the Court declared her in default on August 3, 1999. OFM next moved for the entry of a default judgment on October 13, 1999. However, because OFM failed to properly serve its motion on Ms. Schofield, the Court struck the October motion for default judgment by order filed April 10, 2000.

On April 18, 2000, OFM again moved for a default judgment. This finally elicited a response from Ms. Schofield, as she filed an opposition to OFM's motion, and also moved to dismiss OFM's complaint. The Court now considers these opposing motions.

## ANALYSIS

### I. Jurisdiction

■ This case is properly before the Court pursuant to 28 U.S.C. § 1345 (1994). Section 1345 grants this Court "original jurisdiction of all civil actions ... commenced by the United States." 28 U.S.C. § 1345. *See also* 22 U.S.C. § 4301 et seq. ("[T]he operation in the United States of foreign missions ... is a proper subject for Federal jurisdiction.").

### II. The Plaintiff's Motion for Default Judgment

The plaintiff asserts that, in accordance with the default entered by the Clerk of this

Court on August 3, 1999, a judgment of default is merited. The defendant disagrees. After considering the authority on this matter, the Court declines to enter a default judgment.

■ "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2685 (3d 1998) (citing numerous cases). *See also Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980). Because "modern federal procedure favor[s] a trial on the merits over a default judgment," a default judgment is normally reserved for a "totally unresponsive party." *Jackson*, 636 F.2d at 835. *See also Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C.Cir.1980); *Asia N. Am. Eastbound Rate Agreement v. BJI Indus., Inc.*, 900 F.Supp. 507, 510 (D.D.C.1995). Factors which have influenced the decision to enter a default judgment include, inter alia, the willfulness of the delay and whether the plaintiff has been substantially prejudiced by the delay involved. *See Sir Charles Cox 2X v. District of Columbia*, 1990 WL 209840 *2–3 (D.D.C.1990).

■ Under the above authority, a default judgment is inappropriate in the instant case. True, the plaintiff has been dilatory in her filings. But she is now vigorously mounting a defense, the briefs for which were filed after service of the motion for default judgment. Such an act cuts strongly against any willfulness of the defendant's previous delay. Further, the prejudice to the plaintiff in continuing this suit is minor. If the plaintiff's position is truly well-grounded, a motion for summary judgment should quickly dispose of this case. Thus, imbued with generous discretion, the Court finds these factors as well as the general disfavor of default judgments

to be grounds for denying the plaintiff's motion.

### III. Defendant's Motion to Dismiss

The defendant asserts that the plaintiff's suit should be dismissed because it violates the District of Columbia's eviction procedures. The plaintiff asserts that its eviction has been pursued in accordance with federal common law, and thus is appropriate. The Court agrees with the plaintiff, and accordingly denies the defendant's motion.

A defendant's motion for dismissal may be granted if the plaintiff's claim fails "to state a claim upon which relief can be granted." Fed.R.Civ.Pro. 12(b)(6). In reviewing a claim, a court should presume the allegations to be true and liberally construe them in favor of the plaintiff. *See Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir.1979) (citing *Miree v. DeKalb County, Ga.*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977)). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Wiggins v. Hitchens*, 853 F.Supp. 505, 508 n. 1 (D.D.C.1994) (citing 2A Moore's Federal Practice, § 12.07, at 63 (2d ed.1986) (footnote omitted); *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C.Cir.1987)).

Cases pertaining to the federal government's contractual relations suggest that the government has great leeway in conducting its affairs. As the Supreme Court has opined, "agencies derive their authority to effectuate ... transactions from specific Acts of Congress passed in the exercise of 'constitutional function or power', [and thus] their rights, as well, should derive from a federal source." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726–27, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (quoting *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838 (1943)).[1] But this leeway is not absolute, particularly where

---

1. *See also Booker v. Edwards*, 99 F.3d 1165, 1169 (D.C.Cir.1996) ("The disposal and management of federal property is, moreover, an area traditionally governed by federal law."); *U.S. v. Pappas*, 94 F.3d 795, 801 (2d Cir.1996) ("Whatever the role of state law might be when the United States contracts in a purely proprietary capacity,

there can be no doubt that a contract ... involving national security is governed by federal law."); *Falls Riverway Realty, Inc. v. City of Niagara Falls, NY*, 754 F.2d 49, 55 n. 4 (2d Cir.1985) ("We note that contracts with the government are governed by federal common law.").

"islands" of state law are left unpreempted by comprehensive congressional acts. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994) ("[M]atters left unaddressed in such a ['comprehensive and detailed'] scheme are presumably left subject to disposition provided by state law."). *But see United States v. Little Lake Misere Land Co.*, 412 U.S. 580, 593, 93 S.Ct. 2389, 37 L.Ed.2d 187 (1973) ("[Congressional] silence [on a particular issue] in federal legislation is no reason for limiting the reach of federal law.... To the contrary, the inevitable incompleteness presented by all legislation means that interstitial federal lawmaking is a basic responsibility of the federal courts.").

■ Although the congressional regulation of foreign missions is silent on the issue of leasing, this Court has little hesitation in finding federal common law to be applicable. For there is little debate that, in the area of international relations, "the competence and function of the Judiciary and the National Executive in ordering our relationships with other members of the international community must be treated exclusively as an aspect of federal law." *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 425, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). But that does not end this Court's analysis. Once federal law is deemed applicable, a court must articulate the content of that law.

■ In general, courts give content to federal common law in one of two ways. First, like state courts, they form it themselves based on relevant precedent and policy. Second, and quite ironically, federal courts sometimes adopt the state law on the issue as the content of the federal common law. *See Clearfield Trust*, 318 U.S. at 367, 63 S.Ct. 573 ("In our choice of the applicable federal rule we have occasionally selected state law."). In matters involving real estate connected to international relations, federal common law should be informed by basic contract law, not the landlord/tenant law of the local jurisdic-

tion. Such law is consistent with the principle, established in *Banco Nacional*, that matters touching upon U.S. foreign relations should be unfettered by the state law.

Against this backdrop of authority, it is clear that the property in the instant case is controlled by the edicts of federal common law. The building in question is not a minor property in some far off state; it is the property of Iran and located in the seat of our national government for the very purpose of diplomatic relations. As this very Court has seen in detail, its maintenance and disposition have ramifications that extend well into the realm of foreign policy, an area obviously within the exclusive purview of the federal government.[2] Further, the property is controlled in many respects by various statutes, treaties, and executive orders, implying a strong governmental intent to control its management. *See, e.g.*, 22 U.S.C. § 4301 *et seq.* (1994); 50 U.S.C. § 1701 *et seq.* (1994); 23 U.S.T. 3227; 31 C.F.R. § 535.203(e) (1980).

In sum, the property in question is closely intertwined with federal interests of the highest nature. Thus, the plaintiff may couch its claims in federal common law and need not remedy its grievances in accordance with the District of Columbia's landlord/tenant law. The defendant's motion to dismiss is therefore denied.

### CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the plaintiff's motion for default judgment [14–1] be DENIED; further, it is

ORDERED that the defendant's motion for dismissal [16–1] be DENIED.

SO ORDERED.

---

**2.** The Court refers here to the case of *Flatow v. Islamic Republic of Iran*, 76 F.Supp.2d 16 (D.D.C.1999). *Flatow* involved efforts by a plaintiff to collect a money judgment from the Islamic Republic of Iran through attachment of Iranian

property located in the United States. The plaintiff's attachments were deemed invalid under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1609, 1610 (1994).