Tony Edward SAVAGE, Plaintiff,

v.

Jim SCALES, Customer Relations
Manager, et al., Defendants.

Civil Action No. 02cv1993 (RBW).

United States District Court,
District of Columbia.

March 16, 2004.

Tony Edward Savage, Manassas, VA, Pro se.

Thomas J. Ziko, North Carolina Office of Attorney General, Raleigh, NC, Carl James Schifferle, Michael E. Miller, Office of the Corporation Counsel, Washington, DC, for Defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

The *pro se* plaintiff, Tony Edward Savage, has filed this lawsuit against several defendants, alleging that the defendants violated his civil rights as protected by 42 U.S.C. § 1983 (2000), his due process rights guaranteed by the United States Constitution, and D.C.Code § 11–921(3)(A)(vii), when they garnished his wages to satisfy a student loan he owed to the United States Department of Education without first providing him with notice or a hearing. Currently before the Court are the motions of the defendants for dismissal and plaintiff's motion for summary judgment. For the reasons set forth herein, the Court will grant the defendants' motions for dismissal and dismiss this action with prejudice.

### I.

At the time he filed his complaint, plaintiff was an employee of the District of Columbia Department of Corrections[1] and

---

1. Since the filing of this complaint, plaintiff has filed a separate action alleging that the District of Columbia violated his rights protected by 42 U.S.C. § 1983, when it terminat-

a resident of Virginia. Compl. ¶ 3.[2] He was sued by the North Carolina State Education Assistance Authority ("NCSEAA" or the "Authority"), one of the defendants in this action, in 1985, in the General District Court of Richmond, Virginia. *Id.* ¶ 7. The suit was instituted to recover funds plaintiff allegedly owed for a student loan he had acquired. *Id.* According to plaintiff, he never received any notice of the lawsuit and was never served with the summons or complaint. *Id.* ¶ 9. As a result of his failure to appear, NCSEAA was granted a default judgment against plaintiff in the amount of $4,100. *Id.* ¶ 10. Subsequently, in September 1995, plaintiff received a summons to appear in the General District Court to answer the NCSEAA's motion for garnishment of his wages. *Id.* ¶ 11. Plaintiff appeared in court on September 19, 1995, at which time he orally requested that the default judgment be vacated because he had no prior knowledge that the action had been filed against him. *Id.* ¶ 13. Plaintiff alleges that the General District Court thereafter "enjoined" the defendant's motions for a default judgment and garnishment, determined that the NCSEAA had failed to effect proper service upon plaintiff, and "ruled that the [m]otion for [g]arnishment [o]rder be dismissed with prejudice on the ground that the statute of limitations had run out from the 1985 action." *Id.* ¶¶ 14–15.

Despite the ruling of the Richmond, Virginia Court, plaintiff states that on July 22, 2002, his paycheck was garnished in the amount of $141.07[3] and his bi-weekly paychecks continued to be garnished in that amount. *Id.* ¶ 16. Plaintiff contacted the District of Columbia's Office of Pay/Retirement ("D.C.OPR") on July 24, 2002, to inquire about the garnishment of his wages. *Id.* ¶ 17. At that time, he spoke with defendants Jean Carson, the office supervisor, and Judy Banks, the office director, who informed plaintiff that the office had received an "Administrative Order" from the NCSEAA, authorizing the garnishment of plaintiff's wages. *Id.* ¶ 18. Carson and Banks faxed plaintiff a copy of this "Administrative Order," which was entitled "Notice of Wage Garnishment and Withholding Order." *Id.; see also* Compl., Exhibit ("Ex.") A (Notice of Wage Garnishment and Withholding Order dated April 2, 2002). In this Order, the NCSEAA stated that it was "order[ing] and direct[ing]" the D.C. OPR "to withhold income from the debtor's [(plaintiff's)] disposable pay from employment for payment of defaulted student loan(s)." Compl., Ex. A. The NCSEAA stated that it was granted this authority pursuant to federal law, and stated that "a deduction of 10% of disposable pay ...." should be paid to the NCSEAA until such time as the NCSEAA informed the office to cease the payments. *Id.* As of the date of the "Order," plaintiff's outstanding balance was represented to be $9,005.10. *Id.*

On July 24, 2002, plaintiff contacted the NCSEAA and spoke with defendant Jim

ed his employment. *See Savage v. District of Columbia*, Civil Action No. 03–184 (D.D.C. Feb. 4, 2003). Currently pending in that action are the defendants' motion for judgment on the pleadings and plaintiff's motion for summary judgment. The Court will resolve those motions in a separate opinion that will be issued in the near future.

2. References to "Compl." are to the Complaint filed by plaintiff in Superior Court on September 17, 2002. This complaint was at-

tached to the defendants' Notice of Removal filed in this Court on October 10, 2002.

3. According to the NCSEAA's Director of Agency Guaranty Services, the amount of the first garnishment was $139.07. *See* Defendants' NCSEAA and Scales Motion to Dismiss ("N.C. Defs.' Mot."), Affidavit of Wayne Johnson dated November 11, 2002 ("Johnson Aff.") ¶ 14.

Scales, a NCSEAA employee, about the garnishment order. Compl. ¶ 19. Mr. Scales informed plaintiff that he did not have plaintiff's current mailing address and therefore had been unable to send plaintiff notice prior to the attachment and garnishment of plaintiff's wages. *Id.* ¶ 20. Plaintiff then gave Mr. Scales his mailing address. *Id.* ¶ 21. In a letter addressed to Scales and Banks dated July 24, 2002, and entitled "Claim Demand and/or in Alternative Notice to File Civil Rights Action for Due Process Violations," plaintiff indicated his intention to file a lawsuit for the defendants' alleged unlawful garnishment of his wages without providing him notice prior to the garnishment. Compl., Ex. C (Letter to Jim Scales and Judy Banks from Tony Edward Savage dated July 24, 2002). Plaintiff stated that the garnishment was obtained by "fraudulent representation[s]" made by a NCSEAA employee, Lavave Ennis, and that plaintiff was therefore deprived of due process. *Id.* at 2. Plaintiff stated he would seek to recover $1,500,000 from the State of North Carolina and the NCSEAA and its employee, in addition to $1,500,000 from the D.C. OPR and its employees. *Id.* Plaintiff demanded that the State of North Carolina and the NCSEAA rescind the Order of garnishment and return to him all garnished monies. *Id.* at 3.

In a letter dated August 12, 2002, the NCSEAA informed plaintiff that

> it is apparent that you misunderstand the past sequence of events relative to your defaulted student loan account. You defaulted on your student loans in 1985. The Authority referred your account to outside attorneys who obtained a judgment against you on our behalf in Richmond, Virginia in March 1987. A second action was subsequently initiated against you in 1995 through another outside attorney. It is this second action that was dismissed. However, the judg-

> ment on the initial action remained and remains valid.

> It appears that judicial garnishment could not be pursued against you in 1995 based on the initial judgment due to your status as an employee of the District of Columbia. However, your debt was not 'dismissed' and remains valid . . . .

> The garnishment order that the Authority has recently issued to your employer is not a result of the past judgment. We are not pursuing *judicial* garnishment. Instead, in the time since the judgment was obtained, federal law has changed and now allows the Authority to pursue *administrative* wage garnishment directly, without the need for judicial involvement. There is no current prohibition against administrative wage garnishment of District of Columbia employees.

> As a result, your debt is valid and our initiation of administrative wage garnishment to collect this debt on behalf of the U.S. Department of Education is legitimate.

> The Authority provided you with due process relative to administrative wage garnishment when we sent you a notice regarding these proceedings in late February.

Compl., Ex. B (Letter to Tony E. Savage from Wayne Johnson, NCSEAA Director of Guaranty Agency Services, dated August 15, 2002).

Plaintiff filed his complaint in this action in the Superior Court for the District of Columbia on September 17, 2002. On October 10, 2002, the action was removed to this Court based on federal question jurisdiction. Plaintiff argues that pursuant to District of Columbia law, defendants were required to provide him with notice and an administrative hearing prior to garnishing

his wages and because defendants failed to do so, they have violated his due process rights protected by the Fifth and Fourteenth Amendments of the United States Constitution. Compl. at 7, ¶ 29.

## II.

The first issue the Court will address is plaintiff's Motion for Judgment by Default.[4] Plaintiff bases his request for a default judgment on the fact that the District of Columbia defendants did not timely file a responsive pleading or a motion to dismiss his complaint in accordance with the time limits prescribed by the Federal Rules of Civil Procedure. The District of Columbia defendants did file a Second Motion for Extension of Time on November 26, 2002, the day after their time allotted for a response had expired.[5] This motion was subsequently granted on February 7, 2003. Defendants also filed a Motion to Dismiss on November 27, 2002, which is currently pending resolution. No entry of a default has been entered by the Clerk of the Court.

■■■ "When an application is made to the court under Rule 55(b)(2) for the entry of a judgment by default, the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Wright, Miller & Kane, Federal Practice and Procedure § 2685 (3d ed.1998); *see also Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir. 1980); *United States v. Schofield*, 197 F.R.D. 6, 8 (D.D.C.2000). Judicial policy strongly favors deciding cases on their merits rather than by default judgments; therefore, default judgements are usually reserved for totally unresponsive parties. *Jackson*, 636 F.2d at 835–836. In determining whether the entry of a default judgment is appropriate, the District of Columbia Circuit has announced three criteria to consider: (1) whether the defendant's lack of response was willful; (2) whether not entering a default would prejudice the plaintiff; and (3) whether the defendant will likely assert a meritorious defense. *Id.* at 836.

■■■ Here there is no evidence of bad faith or willful disregard by the District of Columbia defendants, as they submitted their motion for an extension of time to respond to the complaint one day after the response deadline, and before plaintiff filed his motion for a default judgment. In addition, the District of Columbia defendants presented a reasonable, good faith explanation for their slight delay in replying to plaintiff's motion. Plaintiff also sustained no prejudice as a result of the late filing, as his ability to adjudicate his claim on the merits has not been diminished by the delay. Finally, the District of Columbia defendants have asserted a potentially meritorious defense in their motion to dismiss. For all of these reasons, plaintiff's motion for the entry of a default judgment against the District of Columbia defendants is denied.

## III.

Because the two groups of defendants (the North Carolina defendants and the District of Columbia defendants) have filed separate pleadings seeking dismissal of plaintiff's complaint on slightly different grounds, and plaintiff has filed separate

---

**4.** This motion was also, in the alternative, an opposition to the District of Columbia's motion to dismiss.

**5.** The first motion for an extension of time was filed on October 25, 2002, and was granted, thereby extending the District of Columbia defendants' time to answer or otherwise respond to the complaint to November 25, 2002.

motions for summary judgment against each group of defendants, the Court will separately discuss and resolve each of the motions as they pertain to each of the two groups of defendants.

## A. The North Carolina Defendants

### 1. The Parties' Arguments

Defendants NCSEAA and its employee Jim Scales have filed a motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. First, the NCSEAA argues that it cannot be sued pursuant to 42 U.S.C. § 1983 because "neither a state nor a state official in his or her official capacity is a 'person' within the meaning of [the statute]." Defendants NCSEAA and Jim Scales Memorandum of Law in Support of Motion to Dismiss ("N.C. Defs.' Mem.") at 4. As to defendant Scales, defendants contend that plaintiff has failed to allege facts sufficient to find that Scales was personally involved or responsible for the alleged violation of plaintiff's constitutional rights, and thus the § 1983 claim against Scales in his individual capacity must also be dismissed. *Id.* at 5–7. Second, defendants argue that plaintiff has not stated an actionable claim for the violation of his due

process rights because he has not stated that he suffered any injury as a result of the garnishment and does not deny that the garnishment pertains to a lawful debt. *Id.* at 9. Third, defendants contend that plaintiff fails to establish that they violated his due process rights because they sent him notice of the garnishment and complied with the statutory prerequisites for implementing a garnishment, which precludes plaintiff from prevailing on his claim that they have violated his due process rights. *Id.* at 10–12. Finally, defendants assert that plaintiff cannot successfully allege a claim against them pursuant to District of Columbia law because the federal law that provided them with authority to garnish his wages preempts District of Columbia law on the matter. *Id.* at 13.

■ Taking exception to defendants' arguments, plaintiff has filed an opposition [6] to the defendants' motion and has filed his own motion for summary judgment.[7] First, plaintiff argues that he can maintain a § 1983 action against the NCSEAA because it "is an independent state agency operating under the authority of the State of North Carolina and ... therefore is not immune from damage suits brought under the 1964 Civil Rights Act for a cause of

6. The Court issued an Order to plaintiff dated July 25, 2003, in compliance with the dictates of *Fox v. Strickland*, 837 F.2d 507 (D.C.Cir. 1988), and *Neal v. Kelly*, 963 F.2d 453 (D.C.Cir.1992), ordering plaintiff to fully respond to the defendants' contentions. Plaintiff filed a Motion to Supplement his Opposition to Defendants' Motion to Dismiss on July 28, 2003, which the Court will grant in the Order accompanying this Memorandum Opinion.

7. Attached to plaintiff's "Motion for Summary Judgment" is a "Statement of Material Facts Not in Dispute" wherein plaintiff provides facts and legal argument in support of his claims. Defendants argue that plaintiff's pleading consists of "conclusory legal claims

without any supporting authority or affidavits...." Response to Plaintiff's Motion for Summary Judgment and Reply to Supplemental Opposition to Defendants' Motion to Dismiss ("N.C. Defs.' Opp'n") at 1. The Court must construe plaintiff's pleading, as a *pro se* pleading, liberally, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and will therefore not grant the defendants' motion as conceded, but rather will address the substance of the parties' arguments. The Court deems plaintiff's "Statement of Material Facts Not in Dispute" as both a statement of facts not in dispute and his memorandum of law in support of his request for summary judgment.

action arising under 42 USC [sic] 1983." Plaintiff's Reply to Defendants Jim Scales and NCSEAA's Opposition to Plaintiff's Motion for Summary Judgment ("Pl.'s Reply") at 2, ¶ 7. Second, plaintiff argues that he can maintain an action against defendant Scales because he has alleged sufficient facts in his complaint demonstrating "that defendant Scales was personally involved in securing the garnishment attachment acting on behalf of NCSEAA." *Id.* at 3, ¶ 9. Third, plaintiff argues that the defendants' reliance on a federal statute did not obviate the requirement that they obtain a Writ of Attachment pursuant to District of Columbia law, and, if it is true that the statute permitted defendants to "suspend" state and local procedures for the attachment and garnishment of wages, the law "would be as a matter of federal common law unconstitutional under the protected property interest right clauses to the Fourteenth Amendment of the United States Constitution." *Id.* at 4, ¶¶ 14, 16; *see also id.* at 5, ¶ 20.

## B. Analysis of the Claims Regarding the North Carolina Defendants

### 1. Standard of Review

 Defendants have filed a motion to dismiss plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Ordinarily, relief on this ground would not be appropriate, as defendants have attached documents to the motion, including an affidavit, which normally the Court cannot consider without converting the motion into one for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) ("If, on a motion asserting the

defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."); *Herron v. Veneman,* 305 F.Supp.2d 64, 2004 WL 254576, at *3 (D.D.C.2004) (noting that "the introduction of factual materials by the parties—including depositions, answers to interrogatories, admissions on file and affidavits—will convert a Rule 12(b)(6) motion to dismiss to a Rule 56(b) motion for summary judgment[,]" although the conversion is dependent on " 'whether the court actually took cognizance of [the materials submitted].' ") (citations omitted).[8]

 While the fact that defendants have submitted documentary evidence would normally require the Court to provide the parties with additional time to respond before considering those materials, in this case, notice to the parties has already been provided. On July 24, 2003, after the defendants filed their motion to dismiss, the Court issued an Order to plaintiff informing him that " 'any factual assertions in the movant's affidavits will be accepted as being true unless [plaintiff] submit[ted] his own affidavits or other documentary evidence contradicting the assertion.' " Order dated July 24, 2003 (quoting *Neal v. Kelly,* 963 F.2d 453, 456 (D.C.Cir.1992)). Thereafter, plaintiff filed a "Motion to Supplement Opposition" in addition to his own motion for summary judgment. In light of these circumstances, the Court

---

8. There are two exceptions to this rule. The first is "where a document is referred to in the complaint and [is] central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judg-

ment." *Lipton v. MCI Worldcom, Inc.,* 135 F.Supp.2d 182, 186 (D.D.C.2001) (citations omitted). Second, "the court may take judicial notice of" public documents, "even if they are not included in, or attached to the complaint." *Id.* (citations omitted).

concludes that both parties have been afforded the opportunity to fully present support for their respective positions and therefore the Court will convert the defendants' motion to dismiss into a motion for summary judgment. *Cf. Neal,* 963 F.2d at 457 (where the district court failed to inform the *pro se* plaintiff "of the consequence of his failing to counter the defendant's affidavit with affidavits of his own[,]" the Circuit Court reversed the district court's grant of summary judgment and remanded the case back to the district court); *Baker v. Henderson,* 150 F.Supp.2d 13, 16 (D.D.C.2001) (holding that court would not convert defendants' motion to dismiss into one for summary judgment where the *pro se* plaintiff had "not yet been afforded an appropriate opportunity to conduct discovery and submit materials relevant to a summary judgment motion). Unlike *Neal* and *Baker,* here the Court has explicitly informed plaintiff of the consequences of failing to counter the assertions made in the defendants' affidavits, has provided plaintiff with the opportunity to supplement his opposition, and plaintiff has himself moved for summary judgment. Accordingly, the Court concludes that none of the parties will be prejudiced by it considering defendants' motion as one for summary judgment.

"When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... by affidavits or otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must grant the motion for summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is mandated after there has been an "adequate time for discovery ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court is mindful, throughout its analysis, that it must construe the pleadings filed by plaintiff, as a *pro se* litigant, liberally. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

### 2. Plaintiff's § 1983 Claims Against the North Carolina Defendants

■ 42 U.S.C. § 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Defendant NCSEAA states that plaintiff cannot maintain his § 1983 action against it because neither a state nor a state agency is a proper "person" as defined in the statute. Defendant is correct. In *Will v. Michigan Department of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Court explained that while

Section 1983 provides a federal forum to remedy many deprivations of civil liberties, ... it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity....

*Id.* at 66, 109 S.Ct. 2304 (citation omitted). Therefore, the plaintiff in *Will* could not assert his claims against the Department of State Police and the Director of State Police in his official capacity. *Id.* at 71, 109 S.Ct. 2304; *see also Mitchell v. Comm'n on Adult Entertainment,* 12 F.3d 406, 408 (3d Cir.1993) ("This is clearly a suit against a state agency, and the Commission was entitled to eleventh amendment immunity.") (citing *Will,* 491 U.S. at 58, 109 S.Ct. 2304); *Scott v. Dep't of Public Welfare,* No. Civ.A. 02–3799, 2003 WL 22133799, at *3–4 (E.D.Pa. Aug. 28, 2003) (holding that Eleventh Amendment immunity barred § 1983 action against state agency); *Nelson v. Dep't of Public Welfare,* 244 F.Supp.2d 382, 390 (E.D.Pa.2002) ("Since the Eleventh Amendment bars suit against state agencies, this court lacks jurisdiction to hear any § 1983 action against the [Department of Public Welfare]."); *Lyon v. Jones,* 168 F.Supp.2d 1, 5 (D.Conn.2001) ("Immunity [from suit] extends to suits brought against a state, its agencies or state officials sued in their official capacities.") (citing *Regents of University of California v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)).

Plaintiff does not offer any justification, such as a waiver of sovereign immunity by the state, in support of a finding that the NCSEAA can be sued in this case. In fact, he concedes that the "NCSEAA is an independent state agency...." Pl.'s Reply at 2, ¶ 7. Nonetheless, he asserts that the NCSEAA is "not immune from damages under the 1964 Civil Rights Act for a cause of action arising under 42 USC 1983." *Id.*

However, plaintiff has not stated a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (2000), which protects individuals against unlawful discrimination based on "race, color, religion, sex, or national origin[.]" *See also* 42 U.S.C. § 2000d (which protects persons from being denied benefits or activities funded in part by federal monies on the "ground of race, color, or national origin...."). Plaintiff has not asserted any claims giving rise to a cause of action under this statute. Accordingly, the Court grants the NCSEAA's motion for dismissal of plaintiff's § 1983 claim which is directed at the NCSEAA.

 Regarding plaintiff's § 1983 claim against NCSEAA employee Scales in his personal capacity, the NCSEAA argues that plaintiff has not alleged that "Scales was in any way responsible for sending the notice of garnishment to the District of Columbia[,]" and thus plaintiff's § 1983 claim against Scales must be dismissed. N.C. Defs.' Mem. at 5. In opposition, plaintiff asserts that he "contended at 3, para. 5 and 5 at 19–21 of his complaint that defendant Scales was personally involved in securing the garnishment attachment acting on behalf of NCSEAA." Pl.'s Reply at 3, ¶ 9. In his complaint, plaintiff does alleges that "Defendant Scales was responsible for sending the paperwork regarding NCSEAA claims of monies owed by the Plaintiff for a student loan debt...." Compl. ¶ 5. He further alleged that defendant Scales told plaintiff "that he did not have [plaintiff's] current mailing address and that he had no way of sending notice prior to the attachment and garnishment of Plaintiff's wage earnings." *Id.* ¶ 20.

Despite what plaintiff asserts in his complaint, the NCSEAA has submitted with its initial motion for dismissal the affidavit of Wayne Johnson, NCSEAA's Director of

Guaranty Agency Services, wherein he asserts that

> Mr. Scales is in no way responsible for the administrative wage garnishment process administered by NCSEAA and thus in no way responsible for sending either the 'Notice Prior to Wage Withholding' to Tony Edward Savage ... or the 'Notice of Wage Garnishment and Withholding Order....

Affidavit of Wayne Johnson, NCSEAA Director of Guaranty Agency Services, dated November 11, 2002 ("Johnson Aff.") ¶ 16. Even construing plaintiff's Statement of Material Facts Not in Dispute as his affidavit, plaintiff has not offered any substantive evidence regarding Mr. Scales' personal involvement in the garnishment process in his case, aside from the conclusory allegations contained in his complaint. This is clearly insufficient to defeat summary judgment. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise ... must set forth specific facts...."); *Westech Gear Corp. v. Dep't of Navy*, No. Civ.A. 87–2609, 1988 WL 170558, at *4 (D.D.C. May 9, 1988) (granting summary judgment to defendant where plaintiff failed to "set forth ... specific facts, either by affidavit or other means, to refute [the defendants'] representations.... Plaintiff has set forth nothing ... other than the bald allegations contained in its complaint; therefore, the Court will enter summary judgment for the defendants ....") (citing Fed.R.Civ.P. 56(e)); *Alatishe v. Irwin*, No. Civ.A. 86–479, 1987 WL 17666, at *4 (D.D.C. Sept. 18, 1987) (granting summary judgment to defendant where plaintiff "presented no evidence whatsoever, beyond the bare allegations in his complaint and his own con-

clusory statements made in his affidavit, to refute defendants' assertions...."). Accordingly, because plaintiff has failed to provide any evidence to refute the defendants' affidavit concerning Scales' lack of involvement in the issuance of the garnishment order, the Court concludes that he has failed to allege, let alone proffer, specific evidence indicating that Scales could be liable to him pursuant to his § 1983 theory of liability. *See Gladden v. Barry*, 558 F.Supp. 676, 678 (D.D.C.1983) (dismissing § 1983 claims against defendant because defendant "cannot be sued under the doctrine of *respondeat superior* pursuant to [§ 1983]" and plaintiff failed to assert that the defendant "was personally involved in [plaintiff's] allegedly discriminatory demotion....").

Because the Court concludes that plaintiff is unable to assert his § 1983 claim against defendant NCSEAA and that plaintiff has failed to refute defendants' affidavit that defendant Scales was not personally involved in issuance of the garnishment order, the Court dismisses plaintiff's § 1983 claims against defendants NCSEAA and Scales.

### 3. Whether 20 U.S.C. § 1095a's Garnishment Procedures Violated Plaintiff's Due Process Rights

Although not asserted with perfection, plaintiff alleges that his wages were garnished without notice, which violated his due process rights. The first prong of this attack is that the defendants, by failing to provide him with notice and an opportunity to be heard prior to the garnishment of his wages, violated the rights afforded to him pursuant to District of Columbia law. Plaintiff's Motion for Summary Judgment, Statement of Material Facts Not in Dispute ("Pl.'s Stmt.") ¶ 8. Plaintiff argues that insofar as defendants contend that federal law "suspended state and local

statutory Writ of Attachment procedures" this "would be as a matter of federal common law unconstitutional under the protected property interest right clauses to the Fourteenth Amendment of the United States Constitution." Pl.'s Reply at 4, ¶ 16.

The facts and arguments advanced by plaintiff are directly analogous to those presented by the plaintiff in *Nelson v. Diversified Collection Services, Inc.*, 961 F.Supp. 863 (D.Md.1997). There, the plaintiff debtor sued a collection agency and a guaranty agency alleging that the garnishment of her wages pursuant to the Higher Education Act, 20 U.S.C. § 1095a, *et seq.* (2000) ("the Act"), "violated her procedural and substantive due process rights guaranteed under the Constitution." *Id.* at 866. The plaintiff also argued that the garnishment of her wages violated Maryland state law, which covered the garnishment of wages. *Id.* at 867. The plaintiff specifically asserted in *Nelson,* as does plaintiff in this case, that she did not receive notice of the garnishment. *Id.* In rejecting the plaintiff's claims and granting summary judgment to the defendants, the Court first held that the plaintiff's procedural due process rights had not been violated because although the statute provided for notice and a hearing, "due process [did] not require that the interested party actually receive the notice." *Id.* at 869 (citing *United States v. 51 Pieces of Real Property,* 17 F.3d 1306, 1316 (10th Cir.1994)). Rather, what due process demands is that "the government 'acted reasonably in selecting means likely to inform [the] person affected....'" *Id.* (quoting *Weigner v. City of New York,* 852 F.2d 646, 649 (2d Cir. 1988), *cert. denied,* 488 U.S. 1005, 109 S.Ct. 785, 102 L.Ed.2d 777 (1989)). Because the *Nelson* defendant had "submitted an affidavit and business records ... indicating that notice was mailed to [the plaintiff's] last known address[,]" the Court concluded "that the notice was reasonable and satisfied [the plaintiff's] due process rights." *Id.* (citing *Virginia Lime Co. v. Craigsville Distrib. Co.,* 670 F.2d 1366, 1368–69 (4th Cir.1982)). Second, the Court held that "[b]ecause the statute ... provides for both a pre-deprivation and post-deprivation administrative hearing upon request ... debtors have a meaningful opportunity to oppose the garnishment under the statute." *Id.* at 870. Furthermore, because the plaintiff in *Nelson,* like the plaintiff here, failed to request either a pre- or post-deprivation hearing, the Court stated that she had "slept" on her rights and could not "claim that her due process rights were violated." *Id.* at 871. The Court also held that the statute did not deprive the plaintiff of substantive due process because it is "rationally related to a legitimate governmental interest[,]" *i.e.,* the "collection of defaulted student loans." *Id.* (citing *Sibley v. United States Dep't of Educ.,* 913 F.Supp. 1181, 1189 (N.D.Ill. 1995)). Finally, the *Nelson* Court rejected the plaintiff's argument that the Act violated the State of Maryland's garnishment laws, concluding that the language of the Act and its legislative history clearly demonstrates Congress' intent that it "preempt[ ] state law and provide[ ] for administrative garnishment of wages for failure to repay federally guaranteed student loans." *Id.* at 872.

In this case, as in *Nelson,* the defendants' Notice of Wage Garnishment Order states that the garnishment was being accomplished pursuant to 20 U.S.C. § 1095a. That provision permits defendants to administratively garnish wages, providing in part, *"[n]otwithstanding any provision of State law,* a guaranty agency ... may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment under a re-

payment agreement...." 20 U.S.C. § 1095a(a) (emphasis added). Clearly, the plain language of the statute indicates that it was designed to preempt any State law when garnishments are implemented to recover federally guaranteed student loans. *See, e.g., United States v. District of Columbia,* 571 F.2d 651, 657 (D.C.Cir.1977) (holding that statute clearly preempted District of Columbia law where language provided that "notwithstanding any other provision of law to the contrary...."). Accordingly, defendants did not have to comply with District of Columbia law [9] prior to garnishing plaintiff's wages as District of Columbia law is preempted by the Act.

Plaintiff next argues that he was not afforded notice or a hearing prior to the garnishment and these omissions violated his right to due process. Regarding notice, the Act provides that

> the individual shall be provided written notice, sent by mail *to the individual's last known address,* a minimum of thirty days prior to the initiation of proceedings, from the guaranty agency ... informing such individual of the nature and amount of the loan obligation to be collected, the intention of the guaranty agency ... to initiate proceedings to collect the debt through deductions from pay, and an explanation of the rights of the individual....

20 U.S.C. § 1095a(a)(2) (emphasis added). On this point, the Johnson affidavit asserts that the

> NCSEAA mailed a 'Notice Prior to Wage Withholding' dated 26 February 2002 to Tony Edward Savage ... pursuant to ... 20 U.S.C. § 1095a ... notifying Tony Edward Savage ... that NCSEAA will order his employer to immediately withhold money from his pay for payment of his defaulted student loan, unless he took the action set forth in the notice.... *[This Notice] was mailed to Tony E. Savage, 14336 Winewood Lane, Number 6, Woodbridge, VA, 22193–2803, which was the last known address NCSEAA had for Tony Edward Savage....*

Johnson Aff. ¶¶ 8–9 (emphasis added); *see also* Johnson Aff., Ex. D ("Notice Prior to Wage Withholding" addressed to Tony E. Savage from the NCSEAA dated February 26, 2002). A return receipt indicates that the letter was received and signed for on March 13, 2002. Johnson Aff., Ex. E (Certified Mail Receipt). Plaintiff does not contest the fact that notice was sent to this prior address. And notably, he does not contend that he never resided at the Winewood Lane address, which defendant had on file as plaintiff's last known address. Rather, plaintiff argues that because he did not actually receive the notice, his due process rights were violated.

█ The Supreme Court has clearly held that "[a]n elementary and fundamental requirement of due process in any proceeding ... is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted). However, the

---

9. Specifically, plaintiff relies on D.C.Code §§ 16–546 and 16–548. Section 16–546 provides that "[a]n attachment shall be levied upon the credits of the defendant ... by serving the garnishee with a copy of the writ of attachment and of the interrogatories accompanying the writ...." Section 16–548 provides that "[a]n attachment may be levied upon debts due to the defendant upon a judgment or decree by a service similar to that provided by section 16–546...." A "judgment" is defined to include "an unconditional decree for the payment of money...." D.C.Code § 16–541.

Court did not mandate that notice actually be received; rather, "if with due regard for the practicalities and peculiarities of the case, these conditions are reasonably met the constitutional requirements are satisfied." *Id.* As the *Nelson* Court observed, "[t]he key to the [due process] analysis . . . is whether the notice was mailed, not whether it was received." 961 F.Supp. at 868; *see also Scott v. United States,* 950 F.Supp. 381, 387 (D.D.C.1996) (Noting that "[d]ue process does not require . . . that the interested party actually receive notice[,]" and holding that plaintiff's Fifth Amendment due process rights were not violated where plaintiff alleged he did not receive notice of administrative forfeiture proceedings despite fact that government alleged it mailed notice to the prison where plaintiff was incarcerated. "While [p]laintiff claims to have never received the certified mail notice . . . any such failure does not negate the constitutional adequacy of [the government's] attempt to accomplish actual notice . . . .") (citation omitted).

In this case, the plaintiff has not shed any doubt on the defendants' contention that notice was mailed to his last known address, as the Act required. Accordingly, the Court concludes that defendants satisfied their obligation to provide notice to plaintiff prior to issuing the order of garnishment. In addition to the above procedural safeguards, the Act specifically provides a mechanism through which plaintiff may still request a hearing. Although such a hearing could have been requested prior to the garnishment of plaintiff's wages, the Act provides that if the debtor fails to request such a hearing "on or before the 15th day following the mailing of the notice . . . [,]" the guaranty agency . . . shall provide the individual a hearing . . . upon request, but such hearing need not be provided prior to the issuance of a garnishment order." 20 U.S.C. § 1095a(b). At this hearing, plaintiff may raise issues "concerning the existence or the amount of the debt. . . ." 20 U.S.C. § 1095a(a)(5).[10] In light of this

---

**10.** Plaintiff contends that defendants were unable to proceed with an administrative garnishment in light of the General District Court's dismissal of the defendants' claim in 1995 and argues that any action was precluded under the doctrines of issue preclusion, res judicata, statute of limitations and the Ex Post–Facto proscription. Plaintiff's Opposition to Defendant District of Columbia's Motion to Dismiss ("Pl.'s DC Opp'n") ¶ 7, at 3. Defendant NCSEAA contends, however, that it had also obtained a prior judgment against plaintiff in 1987. The Court summarily rejects each of plaintiff's arguments. First, plaintiff does not refute the NCSEAA's assertion that it obtained a valid judgment against him in 1987, thus precluding any reliance on the defenses of issue preclusion and res judicata. Second, pursuant to the Act, the NCSEAA defendants were not bound by a statute of limitations in pursuing this debt. *See* 20 U.S.C. § 1091a ("It is the purpose of this subsection to ensure that obligations to repay loans and grant overpayments are enforced without regard to any Federal or State

statutory . . . or administrative limitation on the period within which debts may be enforced."); *see also United States v. Distefano,* 279 F.3d 1241, 1243 (10th Cir.2002) ("Congress amended § 1091a to eliminate the statute of limitations associated with collection of Title IV B student loans. . . . The abrogation operates retroactively and is constitutional.") (citing *United States v. Hodges,* 999 F.2d 341, 342 (8th Cir.1993)). Finally, the ex post facto clause only applies to criminal statutes, not a civil statute like the one before the Court in this case. *United States v. Young,* 15 F.3d 1095, 1993 WL 526368, at .*1 (9th Cir.1993) (rejecting debtor's claim "that retroactive application of [the Act] render[ed] the statute an unconstitutional ex post facto law. . . . The Ex Post Facto Clause of the United States Constitution is applicable only to criminal or penal proceedings and thus is not relevant here.") (citation omitted); *see also United States v. Johnson,* 845 F.Supp. 864, 867 (M.D.Fla. 1994) (holding that statutory provision enabling a higher education institution to transfer its interest in a loan in default to the

fact, plaintiff has failed to assert a cognizable due process violation.

For the reasons stated above, the Court concludes that the North Carolina defendants are not liable to plaintiff for any due process violations. Accordingly, the Court will grant the defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

## B. The District of Columbia Defendants

### 1. The Parties' Arguments

Defendants District of Columbia, Banks, and Carson seek dismissal of the complaint as to them because, they argue, plaintiff has failed to state a claim upon which relief can be granted. This is so, they assert, because they were under no duty "to provide notice to [plaintiff] of the garnishment." Defendants District of Columbia, Judy Banks, and Jean Carson's Memorandum of Points and Authorities in Support of Motion to Dismiss at 3. Rather, they allege, because the NCSEAA proceeded pursuant to the federal statute, 20 U.S.C. § 1095(a), it was authorized to garnish plaintiff's wages and there is no language in the statute that "assign[s] the borrower's *employer* . . . any requirement to provide notice." *Id.*

### 2. Standard of Review

The District of Columbia defendants have filed a motion for dismissal and, unlike the North Carolina defendants, have not submitted any documents outside the pleadings for the Court's consideration. When reviewing a motion to dismiss, the court must accept as true all the factual allegations contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). A motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which he is entitled to relief. *Woodruff v. DiMario*, 197 F.R.D. 191, 193 (D.D.C.2000). Plaintiff has also filed a motion for summary judgment against the District of Columbia defendants, the standard for which was discussed *supra* at 130.

### 3. Analysis of Plaintiff's Claims Against the District of Columbia Defendants

 For many of the same reasons set forth regarding its dismissal of the claims against the North Carolina defendants, the Court concludes that the complaint against the District of Columbia defendants must similarly be dismissed. As discussed *supra* at 133–34, 20 U.S.C. § 1095a trumps District of Columbia law regarding the garnishment in this situation, and thus the District of Columbia defendants did not violate plaintiff's due process rights by failing to provide notice to him as the statute only requires that notice be sent "from the guaranty agency or the Secretary. . . ." 20 U.S.C. § 1095a(a)(2). Furthermore, the District of Columbia defendants did not have a duty to verify the accuracy of the order for the garnishment sent to them. *See Walsh v. Wal–Mart Stores, Inc.*, 836 F.2d 1152, 1153 (8th Cir.1988) (holding

---

Secretary [of Education] for collection[,]" did not violate the ex post facto clause. "It is beyond dispute that the ex post facto clause applies only to criminal laws." In addition, while acknowledging that "the prohibition on ex post facto laws cannot simply be circumvented by Congress with the enactment of a civil law which is primarily penal in nature[,]" the Court held that the statute was "not punitive in either purpose or effect so as to require it to be considered a quasi-criminal provision barred by the ex post facto clause of the United States Constitution.").

that employer did not have to determine "the constitutionality of a writ of garnishment ... before complying with its terms."). In fact, if they had failed to garnish plaintiff's wages as set forth in the statute, the District of Columbia defendants themselves could be held liable for the amount owed by plaintiff. *See* 20 U.S.C. § 1095a(a)(6) ("the employer shall pay to ... the guaranty agency as directed in the withholding order issued in this action, and shall be liable for, and the ... guaranty agency ... may sue the employer in a State or Federal court of competent jurisdiction to recover, any amount that such employer fails to withhold from wages due to an employee following receipt of such employer of notice of the withholding order ...."); *see also Walsh,* 836 F.2d at 1153 ("An employer presented with a court order and writ of garnishment is required to comply with that order and garnish its employee's wages; failure to garnish may render the employer-garnishee liable to the judgment creditor.") (citations omitted).

Finally, plaintiff has failed to state cognizable claims against the District of Columbia defendants pursuant to § 1983 as he does not allege that they were personally responsible for issuance of the garnishment order, and, in light of the fact that the Court has concluded that there was no due process violation in that regard and that the defendants did not have to verify the legitimacy of the garnishment order prior to implementing it, plaintiff has failed to state a claim upon which relief can be granted. Therefore, the District of Columbia defendants' motion to dismiss will be granted.

**SO ORDERED** on this 16th day of March, 2004.[11]

11. An Order consistent with the Court's rul-

## ORDER

In accordance with the Memorandum Opinion that accompanies this Order, it is hereby

**ORDERED** that the North Carolina defendants' Motion to Dismiss [# 8] is granted. It is further

**ORDERED** that the District of Columbia defendants' Motion to Dismiss [# 13] is granted. It is further

**ORDERED** that plaintiff's Motion to Supplement Opposition to Defendants' Motion to Dismiss [# 22] is granted. It is further

**ORDERED** that plaintiff's Motion for Summary Judgment [# 23] is denied. It is further

**ORDERED** that the complaint is dismissed with prejudiced.

So Ordered on this 16th day of March, 2004.

ing accompanies this Memorandum Opinion.