

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Zaida L. Toro Avilés<br><br>　　　Demandante-Recurrida<br><br>　　　　　v.<br><br>Puerto Rico Telephone Company<br><br>　　　Demandante-Peticionaria | Certiorari<br><br>2009 TSPR 163<br><br>177 DPR ＿＿＿＿ |

Número del Caso: CC-2005-379


Fecha: 23 de octubre de 2009


Tribunal de Apelaciones:
　　　Región Judicial de Mayagüez

Juez Ponente:
　　　Hon. Carlos Soler Aquino

Abogada de la parte Recurrida:

　　　Lcdo. José R. López de Victoria Bras



Materia:　Reclamación　de　descuento　de　salario,　Sent　encia
declaratoria, daños y perjuicios



Este documento constituye un documento oficial del　Tribunal Supremo que está sujeto a los cambios y correcciones del proces　o de compilación y publicación oficial de las decisiones del Tribunal.　Su distribución electrónica se hace como un servicio público a la c　omunidad.?

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zaida L. Toro Avilés

  Demandante-Recurrida

         v.

                                CC-2005-379      Certiorari

Puerto Rico Telephone Company

  Demandada-Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 23 de octubre de 2009.

En esta ocasión, nos corresponde resolver si un patrono está obligado a cumplir con una orden de embargo de salario emitida contra una de sus empleadas por una agencia administrativa del estado de Nueva York, bajo la autoridad de la ley federal "Higher Education Act"[1]. Además, nos corresponde determinar si el procedimiento de *exequátur* es aplicable a dicha orden administrativa.

**I.**

La demandante-recurrida, Sra. Zaida L. Toro Avilés, es empleada de la Puerto Rico Telephone Company (P.R.T.C.) en la ciudad de Mayagüez,

---

[1] Higher Education Act, 20 U.S.C. sec. 1070 *et seq.* (1965).

Puerto Rico. El 15 de enero de 2003, la P.R.T.C. recibió una Orden de retención de salarios ("Order of Withholding from Earnings") de la corporación estatal de Nueva York "New York State Higher Education Services Corporation" (H.E.S.C.), con fecha del 3 de enero de 2003. La referida orden, que fue emitida en virtud de la ley federal "Higher Education Act" (H.E.A.),[2] establecía que P.R.T.C. tenía que retener del salario de la señora Toro Avilés una suma que no excediera el diez por ciento (10%) del pago neto de la empleada en cada periodo de pago o la suma permitida conforme a la Ley Federal sobre Embargos de Salarios,[3] que permite los embargos múltiples hasta un máximo de veinticinco por ciento (25%) del salario neto. Además, se autorizó al patrono a descontar una suma mayor sólo si el empleado consentía por escrito dicho descuento superior.

En la propia orden de retención remitida por la H.E.S.C. se señalaba que ésta era un mecanismo utilizado para cobrar deudas morosas de préstamos estudiantiles garantizados bajo la legislación federal antecedida. Según la orden, hasta el 31 de diciembre de 2002 la deuda ascendía a seis mil seiscientos dieciséis dólares con un centavo ($6,616.01). En dicho documento se le ordenó al patrono a dirigir las sumas retenidas a la dirección postal de la H.E.S.C., la cual fue provista. Así pues, la P.R.T.C. procedió a hacer los descuentos del salario de la recurrida bisemanalmente de conformidad con este

---

[2] Íd.

[3] Consumer Credit Protection Act, 15 U.S.C. sec. 1671 *et seq.* (1968).

procedimiento. A la señora Toro Avilés se le descontó una primera suma de cincuenta y un dólares con veintiún centavos ($51.21) y se le activó un descuento de setenta y un dólares con sesenta centavos ($71.60) bisemanal hasta que se completara la cantidad adeudada de seis mil seiscientos dieciséis dólares con un centavo ($6,616.01).[4]

Así las cosas, el 15 de enero de 2004, la señora Toro Avilés presentó una demanda contra P.R.T.C. en la que alegó que desde diciembre de 2002 la P.R.T.C. le estaba haciendo descuentos de su salario sin notificación previa, sin evidencia y sin justificación ni autoridad alguna. Además, sostuvo que las actuaciones de su patrono se fundamentaban en una Sentencia del estado de Nueva York que nunca le fue informada ni que fue registrada en Puerto Rico. Alegó que los descuentos estaban afectando su salario contraviniendo las disposiciones de ley y los derechos de ella como empleada. Por último, la demandante alegó que no existían documentos que le hayan sido entregados para justificar tal determinación y que las actuaciones de la P.R.T.C. eran totalmente opresivas e injustificadas.

Por su parte, el 22 de abril de 2004, la P.R.T.C. presentó una Moción en solicitud de sentencia sumaria. Atendida la solicitud, el tribunal mediante Orden dispuso para la comparecencia de la parte demandante requiriéndole su posición. Transcurrido en exceso el término de veinte

---

[4] Véase, Apéndice de la Petición de *certiorari* de la parte demandada-peticionaria, parte VIII, pág. 163.

(20) días concedido a la parte demandante para exponer su posición, ésta no compareció. El 21 de julio de 2004, el foro primario declaró con lugar la moción, desestimando en su totalidad la reclamación de la demandante. Dicho foro concluyó que la P.R.T.C. estaba obligada a cumplir con la orden de retención de salarios, conforme a las disposiciones de la H.E.A.

Inconforme, la señora Toro Avilés presentó recurso de apelación ante el Tribunal de Apelaciones, el cual revocó la sentencia apelada. El foro apelativo intermedio determinó que: "[l]a sentencia extranjera en la que se fundamenta su decisión, no tiene vigencia automática ex[ ]propio vigore. Para que dicha sentencia tenga validez y efectividad en nuestra jurisdicción, se requiere que se cumpla con el procedimiento de Exequátur".

Inconforme, la peticionaria P.R.T.C. acude ante nos mediante recurso de certiorari en el que señala la comisión, por parte del foro apelativo intermedio, de los siguientes errores:

    i.   Erró el Tribunal de Apelaciones al determinar que la orden de retención de salario emitida por la New York Higher Education Services Corporation y con respecto a la deuda de la demandante-recurrida surge de una sentencia extranjera y/o norteamericana.

    ii.   Erró el Honorable Tribunal de Apelaciones al determinar que es necesario un procedimiento de Exequátur para dar validez a la orden de retención de salario que emana de una Ley Federal especial en lo sustantivo y en lo procesal.

    iii.   Erró el Honorable Tribunal de Apelaciones al revocar la sentencia sumaria dictada

> correctamente por el Tribunal de Primera
> Instancia ante la inexistencia de
> controversias de hechos materiales y
> esenciales.

> iv. En la alternativa, erró el Tribunal de
> Apelaciones al determinar que la sentencia
> sumaria no es un procedimiento legítimo
> para obtener el Exequátur.

Con el beneficio de las comparecencias de las partes, procedemos a resolver el recurso.

## II.

El *exequátur* es el procedimiento que se utiliza para reconocer y ejecutar sentencias de tribunales de los estados de Estados Unidos o de países extranjeros en nuestra jurisdicción. El propósito de este procedimiento es garantizar a las partes afectadas por una sentencia extranjera el debido proceso de ley, y así brindarles la oportunidad para ser escuchadas y presentar sus defensas.[5]

A tales efectos, este Tribunal enumeró las normas de Derecho Internacional Privado que rigen, en ausencia de tratado o legislación especial, el reconocimiento y la convalidación de las sentencias extranjeras en Puerto Rico.[6] Dichas normas, que hemos reconocido y ratificado a través de los años, se pueden resumir de la siguiente manera:

1. Que la sentencia extranjera haya sido dictada por un tribunal con jurisdicción sobre la persona y el asunto que sea objeto de la misma.
2. Que la sentencia haya sido dictada por un tribunal competente.

---

[5] <u>Mench</u> v. <u>Mangual</u>, 161 D.P.R. 851, 856 (2004).

[6] Íd., pág. 856-857; <u>Márquez Estrella</u>, *Ex-parte*, 128 D.P.R. 243, 250 (1991); <u>Silva Oliveras</u> v. <u>Durán Rodríguez</u>, 119 D.P.R. 254, 259 (1987); <u>Ef. Litográficos</u> v. <u>Nat. Paper & Type Co.</u>, 112 D.P.R. 389 (1982).

3. Que se haya observado el debido proceso de ley por el tribunal que emitió la sentencia.
4. Que el sistema bajo el cual se dictó la sentencia se distinga por su imparcialidad y ausencia de prejuicio contra los extranjeros.
5. Que la sentencia dictada en el extranjero no sea contraria al orden público del foro requerido o local, que no sea contraria a los principios básicos de la justicia y que no haya sido obtenida mediante fraude.[7]

De la norma antecedida se desprende que su aplicación corresponde solamente a las sentencias dictadas en otros países. En Márquez Estrella, Ex-parte, 128 D.P.R. 243, 250 (1991), definimos, específicamente en el contexto y para efectos del recurso de exequátur, lo que constituye una sentencia de este tipo, señalando que se trata de cualquier sentencia dictada por un **tribunal** ajeno al Estado Libre Asociado, incluyendo los tribunales estatales de los Estados Unidos.

Ahora bien, si se trata de una sentencia de un estado de los Estados Unidos hemos reconocido que el procedimiento de exequátur es relativamente más sencillo.[8] Por consiguiente, contrario a los casos de sentencias de otros países, el reconocimiento en Puerto Rico de las sentencias de algún estado de los Estados Unidos está sujeto simplemente a las limitaciones de la cláusula de entera fe y crédito de la Constitución federal.[9] En estos casos, los tribunales puertorriqueños sólo tienen que darle entera fe y crédito a dichas sentencias estatales,

---

[7] Íd.

[8] Roseberry v. Registrador, 114 D.P.R. 743 (1983); Márquez Estrella, Ex-parte, supra, págs. 255-256.

[9] Íd.

siempre y cuando éstas hayan sido dictadas por un tribunal con jurisdicción sobre la persona y la materia, mediante el debido proceso de ley y no hayan sido obtenidas por fraude.[10] Así pues, el procedimiento de exequátur aplica sólo a situaciones relacionadas con **sentencias** dictadas por tribunales que no formen parte de la jurisdicción puertorriqueña y, a su vez, los requisitos varían dependiendo si la sentencia que se pretende validar es de un país extranjero, o de un estado de los Estados Unidos.

En este caso, sólo en las alegaciones de la parte recurrida se hace mención de una sentencia del estado de Nueva York, y ni siquiera se especifica el tribunal que la emitió. Por consiguiente, luego de un riguroso análisis del expediente, entendemos que dichas expresiones son utilizadas erróneamente para hacer referencia a la orden administrativa de la corporación estatal neoyorquina. Por otro lado, es evidente que el Tribunal de Apelaciones fundamentó su decisión en dichas alegaciones sin verificar si verdaderamente existía una sentencia del estado de New York. La cual, en definitiva, no existe.[11]

Al así actuar, el Tribunal de Apelaciones erró en su función revisora al determinar que la orden de retención de salario emitida por la corporación estatal "New York

---

[10] Márquez Estrella, *Ex-parte, supra*, págs. 255-256.

[11] La confusión sobre la existencia de la sentencia extranjera es tal, que el Tribunal de Apelaciones expresó que existía una sentencia de un tribunal de Nueva York y el Tribunal de Primera Instancia expresó que existía una de un tribunal de Minnesota. Sin embargo, al examinar el expediente surge que la sentencia de Minnesota a la que se hace alusión es la del caso Educational Credit Management Corp. v. Cherish Products Inc., 247 F. Supp. 2d 1132 (2003), la cual fue incluida por P.R.T.C. en su moción de sentencia sumaria como fundamento legal para sustentar sus alegaciones y no estaba relacionada directamente con el caso de autos.

Higher Education Services Corporation" surge de una sentencia del estado de New York. Es claramente palpable que dicha orden no fue emitida por un tribunal. Por lo tanto, el primer error fue cometido ya que el procedimiento de exequátur no es aplicable al caso de autos.

Ahora bien, en este caso nos enfrentamos a una orden administrativa estatal de un estado de los Estados Unidos bajo la autoridad de una ley federal que ocupa el campo y permite la plena ejecución de dicha orden en nuestra jurisdicción sin necesidad de ir a los tribunales. Veamos.

### III.

El programa federal "Federal Family Education Loan Program" (FFELP), antes conocido como "Guaranteed Student Loan Program", fue creado por la ley federal conocida como "Higher Education Act" (H.E.A.) como un esfuerzo para incentivar el uso de capital privado con el objetivo de financiar a bajo interés, préstamos a largo plazo para la educación post-secundaria.[12]

La H.E.A. permite que agencias garantizadoras ("guaranty agency") manejen la administración del programa de préstamos a nivel estatal en nombre del gobierno federal.[13] Este tipo de agencia garantiza el préstamo estudiantil realizado a un prestamista privado. Así pues,

---

[12] 20 U.S.C. sec. 1071 *et seq.*

[13] La H.E.A. define el término de "agencia garantizadora" de la forma siguiente:
> "The term 'guaranty agency' means any State or nonprofit private institution or organization with which the Secretary has an agreement under section 1078(b) of this title." 20 U.S.C. sec. 1085 (j).

si un estudiante no paga dicho préstamo, la agencia garantizadora paga el balance ("out-standing loan balance") al prestamista y toma el título del préstamo. Una vez paga, ésta puede comenzar a realizar esfuerzos para cobrar la deuda.

Cuando el prestatario falla en reembolsar el préstamo, uno de los métodos de cobrar el pago de estos préstamos FFELP en mora, es mediante el embargo administrativo de salario ("Administrative Wage Garnishment").[14] Este tipo de orden permite embargar salarios sin la necesidad de tener una orden judicial, ya que el Congreso entendió que no era costo-efectivo para el Departamento de Justicia perseguir a través del proceso judicial los préstamos en mora que envuelven pequeñas cantidades de dinero.[15]

Con relación a este tipo de embargos, la H.E.A. dispone lo siguiente:

> "(a) **Garnishment requirements**.
>
> **Notwithstanding any provision of State law,** a guaranty agency, or the Secretary in the case of loans made, insured or guaranteed under this title [20 USC §§ 1070 et seq.] that are held by the Secretary, may garnish the disposable pay of an individual to collect the amount owed by the individual, if he or she is not currently making required repayment under a repayment agreement with the Secretary, or, in the case of a loan guaranteed under part B [20 USC §§ 1071 et seq.] on which the guaranty agency received reimbursement from the Secretary under section 428(c) [20 USCS § 1078], with the guaranty agency holding the loan, as appropriate, provided that—

---

[14] 20 U.S.C. sec. 1095(a).

[15] 137 Cong. Rec. S7291-02, S7369.

(1)     the amount deducted for any pay period may not exceed 15 percent of disposable pay, except that a greater percentage may be deducted with the written consent of the individual involved;

(2)     the individual shall be provided written notice, sent by mail to the individual's last known address, a minimum of 30 days prior to the initiation of proceedings, from the guaranty agency or the Secretary, as appropriate, informing such individual of the nature and amount of the loan obligation to be collected, the intention of the guaranty agency or the Secretary, as appropriate, to initiate proceedings to collect the debt through deductions from pay, and an explanation of the rights of the individual under this section;

(3)     the individual shall be provided an opportunity to inspect and copy records relating to the debt;

(4)     ...

(5)     the individual shall be provided an opportunity for a hearing in accordance with subsection (b) on the determination of the Secretary or the guaranty agency, as appropriate, concerning the existence or the amount of the debt,… concerning the existence or the amount of the debt,…

(6)     the employer shall pay to the Secretary or the guaranty agency as directed in the withholding order issued in this action, and shall be liable for, and the Secretary or the guaranty agency, as appropriate, may sue the employer in a State or Federal court of competent jurisdiction to recover, any amount that such employer fails to withhold from wages due an employee following receipt of such employer of notice of the withholding order, plus attorneys' fees, costs, and, in the court's discretion, punitive damages, but such employer shall not be required to vary the normal pay and disbursement cycles in order to comply with this paragraph;

(7)     ...

(8)   Accordance with this section by reason of the fact that the individual's wages have been subject to garnishment under this section, and such individual may sue in a State or Federal court of competent jurisdiction any employer who takes such action. The court shall award attorneys' fees to a prevailing employee and, in its discretion, may order reinstatement of the individual, award punitive damages and back pay to the employee, or order such other remedy as may be reasonably necessary." 20 U.S.C. sec. 1095a

De lo anterior, podemos colegir que este estatuto federal establece una serie de requisitos procesales con los cuales la agencia garantizadora deberá cumplir antes de emitir una orden de embargo de salario al patrono del deudor. Entre estos requisitos se encuentran el deber de notificación y el derecho que tiene el deudor a una vista, entre otros. Sin embargo, como veremos más adelante, el patrono no tiene discreción alguna para negarse a cumplir con la orden.

Las disposiciones legales de la H.E.A. permiten a una agencia garantizadora embargar el salario del prestatario moroso, emitiendo una orden de embargo dirigida a su patrono. La cantidad deducida en un periodo de pago no podrá exceder el quince por ciento (15%) del salario neto.[16] Dicha orden deberá contener la información necesaria para permitirle al patrono cumplir con ésta.[17]

---

[16] 20 U.S.C. sec. 1095(a)(1); aunque al momento de los hechos el máximo permitido por la ley era de diez por ciento (10%). Además, es importante señalar que en el escenario en el cual el empleado estuviese sujeto a múltiples embargos, la legislación federal establece que nunca se le podrá embargar al empleado más del veinticinco por ciento (25%) de su salario neto. 15 U.S.C. sec. 1673(a).

[17] 20 U.S.C. sec. 1095a(c); 34 C.F.R. sec. 682.410(b)(9)(i)(I).

Ahora bien, el patrono de dicho prestatario moroso no está autorizado a impugnar o cuestionar si su empleado debe realmente los préstamos. De hecho, del texto de la disposición sobre el embargo de salario surge que el patrono no tiene defensa alguna contra la orden de embargo al disponer que, "the employer shall pay… as directed in the withholding order."[18] Es decir, la H.E.A. permite que sólo el prestatario moroso, y no su patrono, pueda controvertir la deuda o el procedimiento.[19]

Si luego de recibir la orden de embargo el patrono se negase a cumplirla, podría responder por dicha deuda.[20] La H.E.A. permite a la agencia garantizadora demandar al patrono en los tribunales estatales y federales para recobrar no sólo la deuda del empleado sino, que en este tipo de situación, el patrono podría responder también por las costas y los honorarios de abogado así como por los daños punitivos.[21] Así pues, el patrono no tiene discreción alguna para negarse a cumplir con la orden de embargo emitida por una agencia garantizadora bajo el palio de la H.E.A. Además, el patrono no tiene otras alternativas a seguir en la jurisdicción estatal, ya que la ley federal clara y expresamente ocupa el campo estatal.[22]

---

[18] 20 U.S.C. sec. 1095a(a)(6).

[19] 20 U.S.C. sec. 1095a(a)(5) y 1095a(b).

[20] 20 U.S.C. sec. 1095a(a)(6); 34 C.F.R. sec. 682.410(b)(9)(i)(F).

[21] Íd.

[22] Véase, 20 U.S.C. sec. 1095a(a); esta sección claramente establece que, **"Notwithstanding any provision of State law**, a guaranty agency,… may garnish the disposable pay of an individual…".

Por consiguiente, un patrono en Puerto Rico al que una agencia administrativa de un estado le ha remitido una orden de embargo contra unos de sus empleados, actuando bajo la autoridad de una ley federal que ocupa el campo, está obligado a cumplir con ésta.

En el caso de autos, la P.R.T.C. recibió una orden de embargo de la corporación estatal neoyorquina H.E.S.C., el 15 de enero de 2003, en contra de su empleada Zaida L. Toro Avilés. Dicha orden ordenaba a la P.R.T.C. embargar el diez por ciento (10%) del salario neto de ésta o la suma permitida por la ley federal. La orden contenía el nombre de la empleada, su seguro social, dirección y la cantidad que adeudaba. Además, señalaba la fuente de ley que le permitía a H.E.S.C. emitir la orden de embargo de salario. La orden incluía también la dirección a la cual la P.R.T.C. debía enviar las deducciones hechas, las cuales debían contener el nombre y seguro social de la deudora. Por lo tanto, ésta contenía la información necesaria para permitirle a la P.R.T.C. cumplir con ella.

Por su parte, la señora Toro Avilés expone en su alegato que la P.R.T.C. no tenía autoridad para retener parte de su salario y que no se había seguido el procedimiento de exequátur. Sin embargo, ambos planteamientos son inmeritorios. Ya hemos mencionado que el procedimiento de exequátur no es aplicable a las órdenes administrativas. Además, la actuación de la P.R.T.C. está respaldada por los estatutos federales previamente esbozados. Por tal razón, la actuación de

dicho patrono no fue *ultra vires*, sino que actuó dentro del marco legal permitido. Al mismo tiempo, incumplir con dicha orden administrativa expone al patrono a responder judicialmente.[23]

Por otro lado, la legislación federal no requiere un procedimiento especial para validar la orden de retención de salarios recibida por el patrono, en este caso P.R.T.C. Además, la señora Toro Avilés no impugnó la deuda, no entabló ningún procedimiento judicial en contra de "New York State Higher Education Services Corporation", ni impugnó el proceso seguido por ésta última. Claramente, por disposición federal, en este caso no se requiere un procedimiento especial para validar la orden recibida por la P.R.T.C., previo a darle cumplimiento al embargo de salarios.

Por lo tanto, erró el Tribunal de Apelaciones al determinar que era necesario un procedimiento de exequátur para dar validez a la orden de retención de salarios.

**IV.**

La Regla 36 de Procedimiento Civil provee para que pueda dictarse una sentencia de forma sumaria.[24] En reiteradas ocasiones, hemos expresado que la sentencia sumaria es un mecanismo procesal extraordinario cuyo

---

[23] Con fines ilustrativos, véanse algunas decisiones similares a las que han llegado algunas Cortes de Distrito Federal en la interpretación de esta ley. Educational Credit Management Corp. v. Cherish Products Inc., 247 F. Supp. 2d 1132 (2003); Savage v. Scales, 310 F. Supp. 2d 122 (2004); Educational Credit Management Corporation v. Chuck Wilson, 2005 U.S. Dist. LEXIS 45334 (E.D. Tenn. May 27, 2005).

[24] 32 L.P.R.A. Ap. III R. 36.

propósito fundamental es agilizar la tramitación de los pleitos al eludir la celebración ordinaria de juicios en los méritos.[25] Para que proceda la utilización de este mecanismo, el peticionario tiene que establecer su derecho con claridad y demostrar la inexistencia de una controversia real sustancial sobre hechos materiales.[26]

Así pues, la sentencia solicitada se dictará sumariamente si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, surge que no existe una controversia real sustancial en cuanto a ningún hecho material.[27] Por lo que sólo restaría por resolver una controversia de derecho.[28]

Por otro lado, la parte que se opone a la solicitud de sentencia sumaria no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva, ésta tiene que controvertir la prueba presentada por el peticionario.[29] "No obstante, el mero hecho de que el promovido no se oponga con evidencia que contravenga la presentada por el solicitante de la sentencia sumaria, no implica necesariamente que ésta proceda."[30] Es

---

[25] González Aristud v. Hosp. Pavía, 168 D.P.R. 127, 137 (2006); Sucn. Maldonado v. Sucn. Maldonado, 166 D.P.R. 154, 184 (2005).

[26] González Aristud v. Hosp. Pavía, supra.

[27] 32 L.P.R.A. Ap. III R. 36.3.

[28] Íd.

[29] González Aristud v. Hosp. Pavía, supra, pág. 138; Mgmt. Adm. Servs. Corp. v. E.L.A., 152 D.P.R. 599 (2000).

[30] González Aristud v. Hosp. Pavía, supra, pág. 138; Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 721 (1986).

indispensable demostrar que se tiene razón como cuestión de derecho.

A la luz de lo anterior, luego de analizar el expediente del caso de autos en su totalidad, concluimos que así como dictaminó el Tribunal de Primera Instancia, no queda ningún hecho material en controversia. Además, como cuestión de derecho procedía que se dictara sentencia sumaria. Por consiguiente, el tercer error señalado también fue cometido, ya que el Tribunal de Apelaciones erró al revocar la sentencia sumaria dictada correctamente por el Tribunal de Primera Instancia ante la inexistencia de controversias de hechos materiales y esenciales y que como cuestión de derecho también procedía.[31]

## V.

En armonía con lo antes señalado, se revoca la Sentencia del Tribunal de Apelaciones (Región Judicial de Mayagüez) y se reinstala la Sentencia del Tribunal de Primera Instancia.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[31] Obviamos el argumento en alternativa señalado por el peticionario en el cuarto error por considerarlo inmeritorio. Al aceptar la comisión de los primeros tres errores, el último no es aplicable por tratar sobre la utilización de una sentencia sumaria en un procedimiento de exequátur, algo que no se ajusta a los hechos caso.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Zaida L. Toro Avilés

   Demandante-Recurrida

       v.                     CC-2005-379      Certiorari

Puerto Rico Telephone Company

   Demandada-Peticionaria

**SENTENCIA**

San Juan, Puerto Rico, a 23 de octubre de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia del Tribunal de Apelaciones (Región Judicial de Mayagüez) y se reinstala la Sentencia del Tribunal de Primera Instancia.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera Pérez no intervino. El Juez Asociado señor Martínez Torres no interviene.

Juliana Mosquera Soler
Secretaria del Tribunal Supremo Interina